## Richmond

AUSTIN LEE STOVER

V.

ELLEN J. RATLIFF, ADMINSTRATOR, ETC.

November 26, 1980.

Record No. 791362.

Present: All the Justices.

*James V. Lane* (*Stephen T. Heitz; Litten, Sipe and Miller,* on briefs), for appellant.

*Glenn M. Hodge* (*M. Bruce Wallinger; Wharton, Aldhizer & Weaver,* on brief), for appellee.

PER CURIAM.

In this workmen's compensation case, the Industrial Commission awarded compensation for disability resulting from injuries sustained by the claimant, Hugh F. Flick, Jr., in an industrial accident.[1] Despite the appellee's attempt to inject a new issue on appeal, we decide only one question, *viz.,* whether credible evidence supports the Commission's findings that the employer, Austin Lee Stover, had three or more employees regularly in service and, therefore, that he was subject to the provisions of the Workmen's Compensation Act.[2]

The record shows that Stover conducted a farming operation on some 70 acres of land near Broadway in Rockingham County. In the latter part of 1976, Stover employed Flick as a farmhand. Working as the only farm employee, Flick earned a total of $303.75 during the last seven weeks of 1976. He sustained his injuries January 17, 1977.

In addition to his farming operation, Stover was employed by Taylor Beef Company to purchase cattle and ship them to Taylor's plant in Pennsylvania. For his services, Stover was paid a salary and other compensation of $1.00 per loaded mile for transportation of the cattle purchased for Taylor. Occasionally, awaiting acquisition of a

---

[1] After the case was submitted to the full commission, but before the matter was decided, Flick died as a result of an unrelated accident. His personal representative appears as appellee here.

[2] Under Code § 65.1-28, the Act does not apply to an employer "that has regularly in service less than three employees in the same business within this State."

full load, Stover brought to his farm cattle he had purchased on Taylor's account.

The Commission found that Stover's farming and trucking operations merged to the extent "that they became one business and the employees of each operation counted as the employees of one business." This finding is not an issue on appeal. We look, therefore, to the evidence concerning those persons engaged in the combined operation to determine whether the Commission correctly found Stover had three or more employees regularly in service.[3]

As has been noted, Flick was the only employee engaged in the farming operation. For the purposes of this discussion, we will assume that Flick was an employee regularly in service in the combined operation.

In connection with the hauling business, Stover owned two tractors and three trailers. He engaged various drivers to operate his tractor-trailer units. He engaged other persons, known as "gypsies," to furnish their own tractors and pull his third trailer. Testifying below, Stover stated that one person, Jim Herring, was a "regular driver." We will assume that this statement justifies counting Herring as an employee regularly in service. Stover, therefore, had two employees regularly in service in the combined operation.

Beyond this point, however, if the unsatisfactory record in this case permits any definitive conclusion, it supports the view, urged by Stover, that the persons engaged in the trucking operation, other than Herring, were independent contractors or subcontractors. As such, they were not countable as employees within the meaning of the Workmen's Compensation Act. *Crowder* v. *Haymaker,* 164 Va. 77, 178 S.E. 803 (1935); *Baker* v. *Nussman,* 152 Va. 293, 147 S.E. 246 (1929). This result obtains because the Act applies to the contractual relationship of master and servant. *Mann* v. *Lynchburg,* 129 Va. 453, 459, 106 S.E. 371, 373 (1921).

In a similar situation, we have stated:

> "[U]pon the question . . . whether the relationship of master and servant exists, there are four elements which are considered[:] (1) selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action.
> "But . . . the first, second and third of these elements are

[3] In its written opinion, the Commission did not identify the persons it determined were employees regularly in service.

not essential to the relationship . . . . The 'power of control' is the most significant element bearing on the question. . . . 'In many of the cases the power of substitution or discharge, the payment of wages, and the circumstances bearing upon the relation, are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control.

*Baker* v. *Nussman, supra,* 152 Va. at 303, 147 S.E. at 249.

Where, as here, the work consists of the hauling of property, "the question of who furnishes the truck is subordinate to the question of who has the power of general control of the employee's actions." *Brown* v. *Fox,* 189 Va. 509, 521, 54 S.E.2d 109, 115 (1949). Finally, whether there exists a relationship of master and servant, rather than one of independent contractor or subcontractor, is a question of law and not of fact. *Id.* at 516, 54 S.E.2d at 113.

Here, in the year ending shortly before Flick's accident, Stover engaged 13 different persons in addition to Jim Herring to operate either Stover's tractor-trailer units or to furnish their own tractors and pull his third trailer.[4] He paid these 13 drivers a total of approximately $24,000, with individual operators receiving amounts ranging from $32.25 to $8,717.82. These drivers, however, were not paid wages or salaries; instead, they were paid a portion of the $1.00 per loaded mile Stover received for transporting cattle purchased for Taylor. Drivers furnishing their own tractors were paid a greater portion than those operating Stover's units.

More important, the record does not support the conclusion that Stover retained the power of general control of the drivers' actions. Obviously, Stover had the power to designate the point of delivery of the cattle purchased for Taylor. Beyond this power, however, only speculation can supply the other indicia of control required for a determination that the drivers were employees within the meaning of the Workmen's Compensation Act.

Because no evidence supports the Commission's findings concerning Stover's inclusion as an employer within the terms of the Act, the award appealed from will be reversed and set aside, and final judgment will be entered here in favor of Stover.

*Reversed and final judgment.*

---

[4] Some of these drivers "had little farms that they worked on themselves"; some "worked at other jobs."