## INTERMODAL SERVICES, INC., ET AL.

### v.

## GARY DANIEL SMITH

Record No. 850208

January 15, 1988

Present: All the Justices

*Fred C. Alexander, Jr. (Boothe, Prichard & Dudley*, on briefs), for appellants.

*Leonard S. Sattler (Bray and Sattler*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

In this tort action seeking damages for personal injuries, the defendants filed a plea to the jurisdiction asserting that the plaintiff's exclusive remedy was under the Virginia Workers' Compensation Act (the Act). The dispositive question on appeal is whether the trial court correctly ruled that the Act did not apply because the plaintiff was an independent contractor, not an "employee."

In 1981, appellee Gary Daniel Smith, the plaintiff below, was injured in Alexandria on the premises of appellant Intermodal Services, Inc. (the Services Company), a defendant below. The injuries resulted from a collision between a motor vehicle owned and operated by the plaintiff and a motor vehicle owned by the Ser-

vices Company and operated by appellant Steve Clark, its agent and the other defendant below.

In 1983, the plaintiff filed this damage suit, alleging defendants' negligence caused his injuries. In 1984, the defendants filed a motion to dismiss, asserting that the trial court lacked subject matter jurisdiction and that the claim was within the exclusive jurisdiction of the Industrial Commission of Virginia under the Act. Following an ore tenus hearing, the court denied the motion. The court, in a letter opinion, ruled that "the plaintiff was not an 'employee,' but rather an independent contractor, not subject to the provisions of [the Act]." Accordingly, the court held, the plaintiff could maintain his common-law negligence action against the defendants.

In a 1984 jury trial, the plaintiff recovered a verdict and judgment against the defendants in the amount of $100,000. We awarded the defendants this appeal to consider the correctness of the trial court's ruling on the jurisdictional plea.

Under familiar principles of appellate review, we will view the facts, many of which are conflicting, in the light most favorable to the plaintiff who prevailed below. The plaintiff was a self-employed truck driver who owned several pieces of heavy equipment including a tractor-trailer unit. He operated from his home in the Northern Virginia area as a sole proprietor under the name, "Smith's Fleet Service."

At the time of the accident in question, the plaintiff had leased the tractor portion of his tractor-trailer unit to Intermodal Transportation Services, Inc. (the Transportation Company), an Ohio-based corporation with an office in Alexandria.* The Transportation Company was in the long-haul trucking business. Under the contract with the Transportation Company, the plaintiff moved freight between Alexandria and points in the Northeast, as well as in the local Alexandria area, using his tractor to pull trailers not owned by him. The plaintiff's assignments for the Transportation Company were made by that Company's Alexandria dispatcher who worked from a location within a city block of the property of the Services Company.

The Services Company was a Georgia corporation that had a contract with the Southern Railway Company to operate a rail-

---

* According to counsel, the term "intermodal" means a combination of rail/highway traffic.

highway exchange facility in Alexandria. The Services Company was engaged in the loading and unloading of trailers on and off railroad cars from a "piggyback yard" adjacent to railroad tracks. The Railway Company supplied the ramp for the process and the Services Company provided "the people and the equipment to run the ramp." The Services Company had the responsibility to shift the trailers around the yard and to assure they were properly parked or "spotted."

At times, the piggyback yard became filled with trailers. The Railway Company had leased a vacant parcel of land to receive the overflow. This satellite yard was one-tenth of a mile along a public highway from the piggyback yard. The Services Company used its own yard tractor for work within the piggyback yard but, because that unit was not insured for use on a public highway, obtained properly licensed and insured tractors to pull trailers from the piggyback yard, along the public highway, to the satellite yard.

On the day of the accident, the plaintiff had reported to the Transportation Company's dispatcher in the morning and announced that he was ready to be assigned a trip to haul freight with his tractor. A train had just been unloaded at the piggyback yard and the plaintiff wished to be sent on a trip to Boston. Because there would be a delay due to "paperwork" before the dispatcher could release the plaintiff for the out-of-state trip, the dispatcher asked the plaintiff if he would be willing in the meantime to drive to the piggyback yard to move trailers to the satellite yard "rather than sit around the office" until he could leave for Boston. The plaintiff agreed and, upon inquiry, the dispatcher indicated that the plaintiff would be paid at the "flat" rate of $10 to $12 per trailer moved. Previously, as was the custom, the terminal manager for the Services Company had advised the dispatcher for the Transportation Company of the need for "road drivers" to move trailers along the public highway from the piggyback yard to the satellite yard.

After the plaintiff had transferred approximately a dozen trailers from one yard to the other, he was involved in the accident in question. At the time of the injury, the plaintiff was pulling a trailer on the piggyback yard en route to the satellite yard when his tractor collided with the yard tractor. The plaintiff received workers' compensation benefits for the accident under coverage through the Transportation Company.

On appeal, the defendants contend the trial court erred in denying the jurisdictional plea. In a three-pronged argument, they contend that the plaintiff was an "employee," as defined in § 65.1-4 of the Act, of the Services Company; or that the plaintiff was a "statutory employee," within the provisions of § 65.1-29 or § 65.1-30 of the Act, of the Services Company; or that, even if the plaintiff was not in an employee relationship with the defendant, the defendants were not "other parties" under the Act against whom the plaintiff could maintain a tort action. We reject these contentions; the defendants have misinterpreted the settled law applicable to the facts of this case.

■ The Act protects "employees," as defined in the Act. Nowhere does an independent contractor who himself is injured in an industrial accident come within the terms of the Act. *Baker* v. *Nussman*, 152 Va. 293, 302, 147 S.E. 246, 249 (1929). In other words, independent contractors or subcontractors may not be "employees" within the meaning of the Act. *Stover* v. *Ratliff*, 221 Va. 509, 511, 272 S.E.2d 40, 42 (1980). "This result obtains because the Act applies to the contractual relationship of master and servant." *Id.* The Act "does not undertake to change, as between themselves, the rights of owners and independent contractors"; it "leaves that relationship as it was at common law and we must look to [the common law] in determining who is master and who is servant." *Crowder* v. *Haymaker*, 164 Va. 77, 79, 178 S.E. 803, 804 (1935).

■ "What constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact." *Baker*, 152 Va. at 298, 147 S.E. at 247. The worker's status "must be determined from the facts of the particular case in the light of well settled principles." *Brown* v. *Fox*, 189 Va. 509, 516, 54 S.E.2d 109, 113 (1949). Thus, the initial inquiry here is whether the trial court correctly applied the law and the facts to reach the conclusion that the plaintiff was an independent contractor, not an employee. If the plaintiff was an "employee," he was covered by the Act and his rights under the Act are exclusive. If, however, he was an independent contractor, the Act is inapplicable and maintenance of this action against defendants was proper.

■ Under Code § 65.1-4, as pertinent here, "every person . . . in the service of another under any contract of hire or apprenticeship, written or implied," is an "employee" for purposes of

the Act. Generally, "a person is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed." *Richmond Newspapers* v. *Gill*, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982) (route carrier of newspapers held to be an independent contractor not covered by the Act). The right of control is the determining factor in ascertaining the parties' status in an analysis of an employment relationship. *Virginia Employment Comm'n* v. *A.I.M. Corp.*, 225 Va. 338, 347, 302 S.E.2d 534, 539 (1983). And the right of control includes not only the power to specify the result to be attained, but the power to control "the means and methods by which the result is to be accomplished." *Gill*, 224 Va. at 98, 294 S.E.2d at 843. An employer-employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work. "[I]f the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor." *A.I.M. Corp.*, 225 Va. at 347, 302 S.E.2d at 540; *Craig* v. *Doyle*, 179 Va. 526, 531, 19 S.E.2d 675, 677 (1942). The extent of the reserved right of control may be determined by examining the performance of the parties in the activity under scrutiny.

As we shall demonstrate, there is abundant evidence in the record to support the trial court's ruling that the plaintiff was not an employee and that the corporate defendant reserved only the power to control the result to be attained in this job assignment, and not the means and methods by which the result was to be accomplished.

When the plaintiff reported to the Services Company's dispatcher at the piggyback yard, while passing time until departure on the trip to Boston, he asked "where the trailers were that they wanted moved across the street." He was told where on the yard those trailers were located and he "went back there and started moving trailers." After "hooking up" a trailer, the plaintiff would pull it to the Services Company's "dispatch shack" near the entrance to the piggyback yard. A Services Company employee "came out and walked around it, wrote the number down and [the plaintiff] took it across the street." Upon reaching the satellite yard, the plaintiff drove into the lot, "found an open spot, picked up a couple of [oak] boards, put them under the landing gear,

unhooked and came back to get another." The plaintiff did not see any employees of the Services Company at the satellite yard.

No one instructed the plaintiff how to "hook up" the trailers. No one "checked in" the trailers at the satellite yard. No person employed by the Services Company ever discussed terms of employment with the plaintiff, or told him when to go to lunch, or told him when to begin or cease work. No one gave the plaintiff "any direction whatsoever except go get the trailers and move them across the street."

The plaintiff never was asked by the corporate defendant to complete any forms for payroll deductions. He was paid at a "flat rate" for each trailer moved. No deductions were made from his compensation, which was not paid by the corporate defendant. The plaintiff believed he would be paid by the Transportation Company, but he received his pay from the Southern Railway Company for transferring the trailers.

In sum, the evidence shows that the plaintiff was not selected, supervised, or paid wages by the corporate defendant. Significantly, the Services Company did not reserve the right to control the means and methods by which the plaintiff performed the work; it only retained the right to control the result to be attained.

The foregoing decision ordinarily would dispose of the appeal because, as we have said, the Act does not apply to an independent contractor. Nevertheless, we must touch briefly on the defendants' other two contentions.

Relying on a host of cases, all of which involve claims by employees of independent contractors or subcontractors, defendants contend that the plaintiff was a "statutory employee" of the corporate defendant within the meaning of § 65.1-29 or § 65.1-30 of the Act. Defendants argue that the language of the statutes demonstrates an intention by the General Assembly that independent contractors shall be considered "statutory employees," even though they do not qualify as "employees" under the common law.

We do not agree with that contention. This Court already has ruled to the contrary in the line of cases discussed earlier in this opinion — *Baker* v. *Nussman*, *Crowder* v. *Haymaker*, *Craig* v. *Doyle*, *Stover* v. *Ratliff*, and *Richmond Newspapers* v. *Gill*. The language of the respective statutes fails to support such a conclusion.

Section 65.1-29 provides, as pertinent here, that:

"When any person (in this section . . . referred to as 'owner') undertakes to perform or execute any work . . . and contracts with any other person (in this section . . . referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

Section 65.1-30 contains similar language and deals with the contractor-subcontractor relationship.

■ Defendants urge that the proper construction of the statutory language is that "any workman employed in the work," to whom compensation benefits are owed, includes work performed "*by*" a self-employed person himself, acting as a subcontractor, and not just those employees working "under" a subcontractor. The defendants misconstrue the statutory language, which was considered in detail in *Baker* v. *Nussman.* There, we said that the statutes in issue "never [were] intended to affect the status of a sub-contractor. [They] only took in a class of employees (employees of a subcontractor) and made them eligible to compensation just as the employees of the owner or contractor are eligible under the definition of employees as defined in . . . the Act." 152 Va. at 302, 147 S.E. at 249. In other words, the phrase "workman employed in the work," to whom compensation benefits are owed, refers to employees, not the subcontractor himself. "A sub-contractor does not, anywhere, come within the terms of the Act as entitled to compensation." *Id.*

■ Also, defendants contend that to refuse to include independent contractors as persons covered by the Act leaves a "gap" in the statutory scheme and would permit "an owner or contractor to escape the responsibilities of the Act by the simple expediency of positioning an individual workman as an independent contractor, even though such workman is engaged in performing part of the trade business or occupation of the owner." Even assuming such a subterfuge could become a reality, this argument should be addressed to the General Assembly. We are unwilling to create, by judicial fiat, liability under the Act to a class of persons not presently covered by its provisions. In some states, legislative amendments have achieved this objective by specifically extending pro-

tection of the Act to nonemployees. 1C A. Larson, The Law of Workmen's Compensation § 49.21 at 9-88 (1986). For example, one state has enacted legislation making newsboys under the age of 18 years the employees of the corporation that caused the papers to be delivered. *Id.*, § 49.22 at 9-101.

 Finally, defendants contend that even if the plaintiff is not deemed to be a common-law employee or a statutory employee, neither defendant is an "other party" within the meaning of § 65.1-41 of the Act against whom a tort action can be maintained. Defendants say that regardless of the plaintiff's employment status with the Services Company, at the time of the accident he was engaged in a part of the normal work activity of that company and, thus, they were not "other parties" who could be sued in tort. The obvious answer to this contention is that because the Act as a whole does not apply to the plaintiff under these circumstances, no individual section of the Act is applicable either.

For these reasons, the judgment of the trial court will be

*Affirmed.*

THOMAS, J., dissenting.

At the time he was injured, Smith was unquestionably engaged in Intermodal Services, Inc.'s (the Services Company's) trade, business, or occupation. Yet, the majority concludes that Smith has the right to sue the Services Company in tort. This conclusion is contrary to the unequivocal requirements of Code § 65.1-29.

The Services Company was engaged in the trade, business, or occupation of operating "a rail-highway exchange facility." Ante at ____. As part of its work, the Services Company "engaged in the loading and unloading of trailers on and off railroad cars from a 'piggyback yard' adjacent to railroad tracks." *Id.* The Services Company was also responsible for shifting tractors around the yard to insure they were properly parked. When the piggyback yard became full, the Services Company "obtained properly licensed and insured tractors to pull trailers from the piggyback yard" to a satellite yard. *Id.* When Smith was injured, he was in the piggyback yard, in the process of pulling a trailer to the satellite yard. He collided with the yard tractor. As a matter of fact then, there can be no dispute that, at the time he was injured,

Smith was engaged in the Services Company's trade, business, or occupation.

Code § 65.1-29 provides in pertinent part as follows:

> When *any person* (in this section . . . referred to as "owner") undertakes to perform or execute *any work* which is part of his trade, business, or occupation and contracts with *any other person* (in this section . . . referred to as "subcontractor") for the execution or performance *by* or *under such subcontractor* of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workmen had been immediately employed by him.

(Emphasis added.) Applying Code § 65.1-29 directly to the facts of this case, it is plain that the General Assembly has required that when the Services Company undertook to perform part of its trade, business, or occupation by contracting with Gary Daniel Smith for Smith to perform, either by himself or through Smith's employees, all or part of the work of the Services Company then the Services Company became liable to pay Smith, or anyone Smith employed to do the Service Company's work, compensation under the Act just as if Smith or Smith's employees worked directly for the Services Company. In my opinion, by the direct application of the language of Code § 65.1-29, it is plain that Smith is a statutory employee and that his exclusive remedy is under the Act.

The majority avoids this obvious conclusion by stating that the phrase "workman employed in the work" which is contained in Code § 65.1-29 refers to employees of a subcontractor but not to the subcontractor himself. By this argument, if an employee of Smith's had been operating Smith's truck and was injured, that employee would be covered by the Act, but if Smith himself operated his own truck and was injured, as happened here, then he would not be covered by the Act. The majority's exclusion of the subcontractor himself from coverage under the Act ignores other language in Code § 65.1-29 which precedes the phrase focused upon by the majority.

First, the provision refers to "contracts with any other person." Smith is certainly included in that broad language. Second, the

provision refers to "performance *by* or *under* such contractor" of the whole or any part of the owners work. (Emphasis added.) Performance *by* the contractor refers to the contractor himself. Performance *under* the contractor refers to employees of the contractor. Third, the phrase "workman employed in the work" refers to anyone hired by the owner — which may either be a single contractor or a contractor with employees. Thus, the phrase "workman employed in the work," when read in context, could not possibly mean, as the majority suggests, workman employed by the subcontractor.

The gravamen of the majority opinion is that if an owner hires an independent contractor to do work, then that independent contractor cannot receive worker's compensation benefits because an independent contractor is simply not covered by the Act. The majority thus takes the position that if a person is an independent contractor no further analysis is needed.

I disagree. In my opinion, the fact that a person is an independent contractor does not end the inquiry, it begins the inquiry. Where a person is a traditional employee, he or she is protected by the Act if his or her injuries arise out of or in the course of employment. But where a person is said to be an independent contractor there is a risk that the owner may be using that label to obscure the fact that the injured party is in truth an employee. It is precisely in the case where an injured party is said to be an independent contractor that the difficult questions of coverage arise. An independent contractor not engaged in the owner's trade, business, or occupation is not entitled to protection under the Act. But the opposite result obtains when even an independent contractor is engaged in the owner's trade, business, or occupation.

The cases relied on by the majority are of little or no help in the present problem because most of them did not focus upon Code § 65.1-29 or its predecessor provisions. *See e.g., Va. Emp. Comm. v. A.I.M. Corp.*, 225 Va. 338, 302 S.E.2d 534 (1983) (not a worker's compensation case; no discussion of the worker's compensation statute); *Richmond Newspapers v. Gill*, 224 Va. 92, 294 S.E.2d 840 (1982) (injured deliveryman held to be independent contractor; no mention of whether claimant was engaged in the trade, business, or occupation of the newspaper at the time of injury); *Stover v. Ratliff*, 221 Va. 509, 272 S.E.2d 40 (1980) (the issue was whether defendant had enough employees to fall within

the scope of the Act; focus was upon control; no analysis of whether various persons claimed to be employees were engaged in defendant's trade, business, or occupation); *Brown* v. *Fox*, 189 Va. 509, 54 S.E.2d 109 (1949) (claimant held not to be an independent contractor; no analysis of whether the claimant was engaged in defendant's trade, business, or occupation); *Craig* v. *Doyle*, 179 Va. 526, 19 S.E.2d 675 (1942) (claimant held *not* to be an independent contractor; no consideration given to whether he was engaged in owner's trade, business, or occupation); and *Crowder* v. *Haymaker*, 164 Va. 77, 178 S.E. 803 (1935) (claimant held to be an independent contractor; no analysis of whether claimant was engaged in defendant's trade, business, or occupation). Not one of the foregoing cases states that an independent contractor who is engaged in the owner's trade, business, or occupation is *not* entitled to coverage under the Act.

The majority relies principally upon *Baker* v. *Nussman*, 152 Va. 293, 147 S.E. 246 (1929), in support of its conclusion that § 65.1-29 provides coverage for employees of subcontractors but not for contractors themselves. *Baker* does reach that conclusion. But there, as here, no mention is made of the language in the statute which refers to "contracts with any other persons" and to "performance *by* or *under* such subcontractor." In my opinion, *Baker* is not well reasoned and should not be followed by the majority.

In going back 59 years in time to follow *Baker*, the majority inexplicably ignores two recent opinions of the Court which, in my opinion, should have been followed. In *Carmody* v. *F. W. Woolworth Co.*, 234 Va. 198, 361 S.E.2d 128 (1987), the claimant was an employee of Photo Corporation of America (PCA). Woolworth granted a license to PCA to operate a portrait photography department in Woolworth's store. Carmody was assigned by PCA to run that department at Woolworth. He was injured when he slipped on a dolly and fell to the floor. He sued Woolworth's in tort. The trial court held that he was Woolworth's statutory employee. We affirmed. We made clear that simply because Carmody was an employee of an independent contractor did not entitle him to sue Woolworth. We said the issue was whether Carmody was engaged in Woolworth's trade, business, or occupation at the time he was injured. Because we concluded that he was, we held that his exclusive remedy was under the Act. To the

same effect is *Henderson* v. *Central Telephone Co.*, 233 Va. 377, 355 S.E.2d 596 (1987).

Admittedly, in *Carmody* and *Henderson*, the claimants were employees of subcontractors and not the subcontractors themselves. Yet, my reading of Code § 65.1-29 convinces me that the distinction should not lead to a different result. I would hold, as the statute requires, that even though Smith was an independent contractor because, at the time he was injured, he was engaged in the Services Company's trade, business, or occupation, he was entitled to worker's compensation coverage from the Services Company and, therefore, could not sue the company in tort.