THOMAS JAMES, JR.

v.

WOOD PRODUCTS OF VIRGINIA

AUGUSTA LUMBER & SUPPLY, INC.

v.

WOOD PRODUCTS OF VIRGINIA

No. 0417-92-4

Decided February 23, 1993

## Counsel

David M. Kopstein (Dross & Levenstein, on brief), for appellant, Thomas James, Jr.

Bradley B. Cavedo (Durrette, Irvin, Lemons & Fenderson, P.C., on brief), for appellant, Augusta Lumber & Supply, Inc.

William C. Walker (Taylor & Walker, P.C., on brief), for appellee.

## Opinion

**BARROW, J.**—In this appeal from the Workers' Compensation Commission, we decide that the commission incorrectly held that Thomas James, Jr. was an independent contractor, not an employee, of Augusta Lumber & Supply, Inc. No credible evidence supported a finding that Augusta Lumber & Supply, Inc. ever relinquished the power to direct the means and methods by which James did his work, and, therefore, James was an employee, not an independent contractor.

Three separate commercial enterprises are involved in this proceeding: Augusta Lumber & Supply, Inc. ("Augusta Lumber"), a business engaged in buying and selling logs which employed James at the time of his injury; Augusta Trucking Company ("Augusta Trucking"), a separate business engaged in transporting logs and lumber which maintains offices in the same building as Augusta Lumber and transports logs and lumber for Augusta Lumber, as well as others; and Wood Products of Virginia, a self-insurance group, of which Augusta Lumber was a member at the time of James' accident.

Before the accident, James hauled lumber, as an independent contractor, for Augusta Trucking, which paid him by the mile. On the day of the accident, James arrived at work expecting to haul a load of lumber for Augusta Trucking to South Carolina. He learned, however, that the load was not ready for transport. The dispatcher for Augusta Trucking told James of a request from Augusta Lumber for a truck to haul logs from a nearby rail siding to the lumberyard. He told James that he would be paid by Augusta Lumber and would be working for

Augusta Lumber. Augusta Lumber intended to employ James "that day on a trial basis and if he worked out good that day then he would be used the next day and thereafter as the need arose." The dispatcher identified the employee of Augusta Lumber who would be supervising him.

The general manager of Augusta Lumber supervised James on the day of the accident. According to the manager, James was expected to assist in the unloading of the gondola car and then haul the logs from the rail siding to the lumberyard. James was expected to direct the operator of a knuckleboom, a piece of equipment used to unload the logs, once the load of logs in the railroad car reached the point where the operator could no longer see them. Because James had not previously spotted logs, the general manager expected to show James the method to use. James was not free to take breaks whenever he wanted to, but was expected to continue on the job until it was finished, not stopping for lunch until directed to do so. The knuckleboom was owned by Augusta Lumber, as was the truck that it was attached to. No method of payment had been worked out between James and Augusta Lumber, but the general manager intended to try James out that day and "see how it worked out and then put him on . . . [the] payroll."

When James was unable properly to position the trailer so that the logs could be loaded, the general manager of Augusta Lumber offered to position the trailer. He was maneuvering the trailer as James stood to the side of the truck when the logs, which had been suspended from the knuckleboom, "fell from the loader, struck James and seriously injured him."

The commission denied James compensation because it found "no contract of hire between [James] and Augusta Lumber" and because evidence of Augusta Lumber's "right to exercise any control over" James was insufficient. We disagree. A contract of hire did exist between James and Augusta Lumber and evidence of Augusta Lumber's right to exercise control over James did exist.

■ "An implied contract of hire exists where one party has rendered services or labor of value to another under circumstances which raise the presumption that the parties intended and understood that they were to be paid for, or which a reasonable man in the position of the person receiving the benefit of the services or labor would or ought to know that compensation or remuneration of some kind was to

be exchanged for them." *Charlottesville Music Ctr., Inc. v. McCray,* 215 Va. 31, 35, 205 S.E.2d 674, 678 (1974). The parties do not dispute that James "rendered services or labor of value" to Augusta Lumber. They also do not dispute that both James and Augusta Lumber "intended and understood that [the services rendered] were to be paid for." Thus, an implied contract of hire existed between James and Augusta Lumber.

■ The only question then, in determining whether James was an employee of Augusta Lumber, is whether by virtue of the contract of hire he was "in the service of" Augusta Lumber. Code § 65.2-101. Whether he was "in the service of," that is, a servant of, Augusta Lumber, as opposed to an independent contractor, depends upon the control retained by Augusta Lumber over James' work. *Intermodal Servs., Inc. v. Smith,* 234 Va. 596, 601, 364 S.E.2d 221, 224 (1988); *Metropolitan Cleaning Corp. v. Crawley,* 14 Va. App. 261, 264, 416 S.E.2d 35, 37 (1992) (en banc). The right of control inherent in an employer and employee relationship is the power to control the means and methods by which the result sought is to be accomplished. *Smith,* 234 Va. at 601, 364 S.E.2d at 224. An employer retains the power to direct "the means and methods" by which an employee performs his or her work. *Id.* Furthermore, "it is not the actual exercise of [this] control, but the right [to] control," that is determinative. *Hann v. Times-Dispatch Pub. Co.,* 166 Va. 102, 106, 184 S.E. 183, 185 (1936).

The testimony before the commission reveals that Augusta Lumber directed "the means and methods" by which James was to do his work. The supervisor instructed him when to take breaks, including his lunch, and where to position his trailer. Furthermore, when James could not properly position the trailer, the supervisor showed him how.

The commission did not reject this testimony; instead, it relied upon factors which failed to show that Augusta Lumber gave up the right to control the means and methods of James' work. In determining that James was not an employee, but was an independent contractor, the commission observed that the manager of Augusta Trucking had advised James of the availability of work with Augusta Lumber, that Augusta Lumber and Augusta Trucking, although closely associated, were operated as separate independent companies without the mingling of assets or personnel, and that the general manager of Augusta Trucking had no authority to hire employees for Augusta

Lumber. These facts relate to the relationship between James and Augusta Trucking; they do not relate to the relationship between James and Augusta Lumber.

The commission also observed that James was "asked to handle only one short trip, i.e. from the rail siding back to the lumberyard, a distance of approximately one mile," a fact of little relevance in determining James's status as an independent contractor. Finally, the commission described the supervisor's placement of the trailer as "no more than an accommodation" and said that James could have refused to allow him to do this, conclusions that the evidence fails to support.

These factors did not rebut the otherwise sufficient evidence that Augusta Lumber retained the right to direct the means and methods by which James performed his work. Therefore, without rejecting the testimony before it, the commission could not have concluded that James was an independent contractor. Because the commission did not reject the testimony, we must conclude that its decision rests upon the incorrect conclusions of law it expressed and that it erred in denying James compensation.

James also asked that we address the calculation of his average weekly wage. This wage was determined by the deputy commissioner on the basis of a $100 check he received from Augusta Lumber for his services on the day the accident occurred. James contends that his average weekly wage should have been computed based on his total income in 1988 from his work as a trucker.[1] Because it determined that James was not entitled to compensation, the commission did not address this issue. Therefore, we decline to address this issue until it has been considered by the commission.

For these reasons, the decision of the commission denying James compensation is reversed, and the matter is remanded for further proceedings.

*Reversed and remanded.*

Benton, J., and Coleman, J., concurred.

---

[1] James' contention raises, in part, an issue we have previously found unnecessary to address. *See Crawley*, 14 Va. App. at 264, 416 S.E.2d at 37.