COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Bray and
          Senior Judge Overton[*]
Argued at Norfolk, Virginia


ASSOCIATED CABS, INC.
                                     MEMORANDUM OPINION[**] BY
v.       Record No. 1823-98-1       JUDGE RICHARD S. BRAY
                                        FEBRUARY 9, 1999
ISSIAH KING


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Kevin W. Grierson (Richard B. Donaldson;
               Jones, Blechman, Woltz & Kelly, P.C., on
               brief), for appellant.

               No brief or argument for appellee.


     Issiah King (claimant) filed a claim for benefits with the

Workers' Compensation Commission (commission) alleging a

compensable accidental injury suffered while in the employ of

Associated Cabs, Inc. (employer).  The deputy commissioner

awarded temporary total disability at a rate of "$312.33 per week

. . . continuing until conditions justif[ied] a modification

thereof."  The full commission affirmed, amending the award to

"$264.83 per week," also until circumstances required

modification.  Employer appeals, complaining the commission

erroneously found that the accident caused claimant's injuries

[*]Judge Overton participated in the hearing and decision of
this case prior to the effective date of his retirement on
January 31, 1999 and thereafter by his designation as a senior
judge pursuant to Code § 17.1-401, recodifying Code
§ 17-116.01:1.

[**]Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

and a related disability and incorrectly calculated the attendant benefits.  Finding no error, we affirm the decision.

The parties are fully conversant with the record, and this memorandum opinion recites only those facts necessary to disposition of the appeal.  On review, we construe the evidence in the light most favorable to the prevailing party below, claimant in this instance.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

The evidence disclosed that claimant regularly drove a taxi for employer, earning a "salary" of $300 per week and an additional weekly "commission" of approximately $100 for driving employer's cabs at night.  While operating a taxi for employer during a salaried period, claimant "got hit in the rear [by another vehicle] and felt a snap . . . in the right side of [his] neck," followed by pain in his neck and shoulder regions.

Claimant was admitted to Bon Secours-DePaul Medical Center immediately after the accident, and a CT scan revealed abnormalities in the cervical spine which required surgical intervention.  A report of the scan concluded that claimant's condition

> may be do [sic] entirely to old degenerative
> joint disease either secondarily induced from
> trauma or perhaps infection.  The possibility
> that the mild subluxation has occurred
> secondary to this trauma superimposed on an
> old injured weakened facet cannot be excluded
> particularly given the clinical new acute
> right upper extremity radiculopathy and
> recent severe neck trauma from an automobile
> accident.

In correspondence dated December 11, 1996, Dr. Jonathan Partington, claimant's treating neurosurgeon, reviewed claimant's history and related findings, noting that he had

> been hospitalized at Bon Secours-DePaul Medical Center from 11/21/96 to the present. He was admitted following a motor vehicle accident which resulted in neck pain and right arm weakness and numbness. The workup revealed instability of C4-C5. He was taken to surgery on 11/26/96 for right C5 foraminotomy, and multiple bone biopsies.
>
> [Claimant] has subsequently developed an apparent C4-C5 infection of the facet joint and possible diskitis and will likely need 4-6 weeks of intravenous antimicrobial therapy. [Claimant] still has right upper extremity weakness and numbness, as well as persistent neck pain.

Dr. Partington opined "that [claimant] will be disabled and unable to be gainfully employed for at least one year."

Claimant testified that he had been asymptomatic prior to the accident. However, he has since been disabled by "severe problems" and has not "been released [to work] by the doctor." The record provided no medical evidence of claimant's condition at the time of the hearing.

Relying upon claimant's testimony, the results of the CT scan, and Dr. Partington's report, the commission determined that claimant "sustained an injury by accident to his neck arising out of and in the course of his employment," which caused temporary total disability. In computing attendant compensation benefits, the commission included claimant's "commission" earnings. Employer challenges the sufficiency of the evidence to support

both the commission's causation findings and calculation of the dependent award.

"The commission's determination regarding causation is a finding of fact and is binding on appeal when supported by credible evidence."  Marcus v. Arlington County Bd. of Supervisors, 15 Va. App. 544, 551, 425 S.E.2d 525, 530 (1993) (citations omitted).  A finding of disability is similarly binding on review by the Court.  See Georgia Pacific Corp. v. Dancy, 17 Va. App. 128, 133-34, 435 S.E.2d 898, 901 (1993).  "'Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing.'  The testimony of a claimant may also be considered in determining causation, especially where the medical testimony is inconclusive."  Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (citations omitted).

Here, the record reflects that claimant was involved in an accident which resulted in trauma to his neck and the onset of pain and discomfort, necessitating immediate medical attention. Subsequent diagnostic care identified a possible nexus between the "severe neck trauma from an automobile accident" and the abnormal studies of claimant's neck.  Claimant's attending neurosurgeon reported on December 11, 1996 that his symptoms "resulted" from the accident and opined that claimant would be "disabled . . . for at least a year."  Claimant testified that he had not "been released by the doctor yet [a]nd . . . still had

severe problems."  Such evidence provides sufficient support for the commission's factual finding that the accident caused both the disputed injury and disability.

Employer next contends that the commission erroneously computed claimant's average weekly wage, arguing that he worked as an independent contractor, rather than an employee, when driving on commission.  "Average weekly wage" includes "[t]he earnings of the injured employee in the employment in which he was working at the time of the injury."  Code § 65.2-101(1)(a). However, earnings as an independent contractor generally cannot be combined with income from employment to calculate average weekly wage.  See Intermodal Servs., Inc. v. Smith, 234 Va. 596, 600, 364 S.E.2d 221, 223 (1988).  Determination by the commission of average weekly wage constitutes a factual finding.  See Chesapeake Bay Seafood House v. Clements, 14 Va. App. 143, 146, 415 S.E.2d 864, 866 (1992) (citations omitted).

"What constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact."  Intermodal Servs., 234 Va. at 600, 364 S.E.2d at 223 (citation omitted).

> Generally, "a person is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed."  "The right of control is the determining factor in ascertaining" whether one is an employee or not.  This right of control includes "the power to specify the result to be attained [and] the power to control 'the means and methods by which the result is to be accomplished.'"  A

> person is an employee if the person for whom he or she is working "has the power to direct the means and methods by which [he or she] does the work."

Metropolitan Cleaning Corp., Inc. v. Crawley, 14 Va. App. 261, 264-65, 416 S.E.2d 35, 37-38 (1992) (en banc) (citation omitted) (alterations in original).

On the instant record, the commission correctly found "that the claimant [on commission] was subject to the control of [employer] both as to the result achieved, i.e. transporting passengers from one location to another, and the means and methods of transporting them, i.e. using [employer's] cab, in the same manner that he used it when on salary."[1]  Although claimant could "pick" his hours of commission work, he was required to provide his services at the direction of employer, as an employee at will, albeit on different terms of payment.  Thus, credible evidence supports the commission's inclusion of claimant's net earnings on commission in his average weekly wage before computing the related benefit.

Accordingly, we affirm the decision of the commission.

Affirmed.

---

[1]Moreover, the evidence does not establish that claimant "is excluded from taxation by the Federal Unemployment Tax Act," a circumstance which removes "[a]ny taxicab . . . driver from the statutory definition of "[e]mployee."  Code § 65.2-101.