COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Annunziata and Senior Judge Cole


BETTER HOME SERVICES, INC.
                                        MEMORANDUM OPINION*
v.    Record No. 1776-00-4                  PER CURIAM
                                         NOVEMBER 21, 2000
ISABEL MEDRANO AND
 UNINSURED EMPLOYER'S FUND


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (John J. O'Donnell, Jr., on brief), for
            appellant.

            (Arturo Hernandez, on brief), for appellee
            Isabel Medrano.

            No brief for appellee Uninsured Employer's
            Fund.


     Better Home Services, Inc. ("BHS") contends that the

Workers' Compensation Commission erred in finding that Isabel

Medrano (claimant) was its employee rather than an independent

contractor at the time of her compensable injury by accident.

Upon reviewing the record and the briefs of the parties, we

conclude that this appeal is without merit.  Accordingly, we

summarily affirm the commission's decision.  See Rule 5A:27.

     "The Workers' Compensation Act covers employees but not

independent contractors."  County of Spotsylvania v. Walker, 25

Va. App. 224, 229, 487 S.E.2d 274, 276 (1997).  This distinction

--------------------------------------

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

must be determined from the facts of each case, with the burden upon the person seeking benefits under the Act to prove the relationship contemplated by the Act.  Id. at 229-30, 487 S.E.2d at 276; see Code § 65.2-101.  Although the commission's factual findings are binding and conclusive on appeal, when they are supported by credible evidence, see James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989), a "[d]etermination of the relationship involves a mixed question of law and fact which is reviewable on appeal."  County of Spotsylvania, 25 Va. App. at 230, 487 S.E.2d at 276.

Generally, an individual "'is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed.  The power of control is the most significant indicium of the employment relationship.'" Behrensen v. Whitaker, 10 Va. App. 364, 367, 392 S.E.2d 508, 509-10 (1990) (quoting Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982)).

> [T]he right of control includes not only the power to specify the result to be attained, but the power to control "the means and methods by which the result is to be accomplished."  An employer/employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work.  "[I]f the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor."

-

<u>Intermodal Servs., Inc. v. Smith</u>, 234 Va. 596, 601, 364 S.E.2d

221, 224 (1988) (citations omitted).

In holding that an employee/employer relationship existed

between claimant and BHS, the commission found as follows:

> Both parties point to different
> documents designating the claimant either as
> a subcontractor or an employee.  BHS notes
> that the claimant signed a subcontractor
> agreement with BHS in 1993.  The claimant
> points out that [Yvonne] Elton[, BHS's
> owner,] represented the claimant as an
> employee on the claimant's green card
> applications.
>
> While these documents are indicative of
> the parties' intent, and the intent of the
> parties is a factor to be considered, it is
> not determinative.  The parties cannot
> merely designate or agree to a legal status
> in derogation of the relationship as
> established by the facts of a particular
> case, but the Commission must look behind
> the agreement to determine the actual
> relationship and the "status in fact."
>
> *    *    *    *    *    *    *
>
> Ms. Elton did more than just solicit
> the cleaning work.  In addition, to
> solicitation, Ms. Elton determined each
> day's work schedule by providing the
> addresses of the houses and the order in
> which to clean the houses.  [BHS] paid
> homeowners for any damage and Ms. Elton
> would charge each worker.  Ms. Elton was the
> primary contact point.  If a homeowner had a
> problem, the homeowner would contact Ms.
> Elton and Ms. Elton would try to remedy it.
> It is of little moment that Ms. Elton
> remedied the problem by enlisting the help
> of the supervisors.  Ms. Elton had complete
> control over the supervisors by determining
> which worker would be promoted to

-

> supervisor. The relationship was not one of
> cooperation but of subordination.

(Footnote omitted.)

The commission's findings are amply supported by credible evidence in the record. Claimant's testimony proved that Yvonne Elton hired claimant in 1993 to clean houses. At that time, Yolanda, a driver/supervisor employed by BHS, trained claimant. In 1995, Elton made claimant a driver/supervisor. Claimant held this position at the time of her accident.

In her position as a driver/supervisor, BHS gave claimant a list of houses to clean each day. Claimant was then required to pick up the other workers and drop them off at the specific houses while driving a BHS van. The van was leased from BHS Leasing, a company owned by Elton's husband, to claimant. Claimant testified that in 1996, Elton took her and other drivers to get insurance on the vehicles. The named insured on the policy of insurance on the vehicle being driven by claimant at the time of her accident was "Izabel Medrano DBA BHS Vehicle Leasing." Claimant believed that the vans were leased to BHS.

Claimant was responsible for training the workers and for making sure the houses were properly cleaned. Claimant testified that BHS provided vacuums, brooms, and mops, which claimant picked up each morning and returned at the end of the day. She stated that at times, BHS provided cleaning supplies and at times, the homeowner provided the cleaning supplies.

-

For housecleaning, BHS paid claimant thirty-five percent of the fee charged to the homeowner. For driving, BHS paid claimant $500 every two weeks. She was not paid for travel between homes. She and the other workers were given 1099 forms, and BHS did not withhold any taxes or social security from their earnings.

During the time claimant worked for BHS, she did not work for anyone else and she did not clean houses on her own, believing this was prohibited by BHS. She had to ask Elton for permission to miss a day of work. Elton admitted that she fired claimant after her accident, because claimant refused to sign a document stating that she was a subcontractor.

Mirna Villalta, another BHS worker, testified that claimant was her supervisor and trained her. She stated that claimant drove the van and checked the work. At that time, there were twenty-four to twenty-five people working for BHS. Villalta testified that she did not work for anyone else and she was required to inform Elton if she was going to miss work, otherwise Elton would be "very upset." Villalta stated that if she broke something while on the job, Elton would be notified and she would charge Villalta for the broken item. Villalta agreed that Elton provided vacuum cleaners and other equipment and sometimes provided cleaning supplies.

The testimony of claimant and Villalta support the commission's findings. Contrary to employer's contention, the

-

use of a system of supervisors to accomplish the work did not change the relationship between BHS and claimant from one of employer/employee to an independent contractor relationship. Based upon this evidence, the commission could reasonably conclude that BHS exercised the requisite control over claimant to make her its employee.  For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>

-