COURT OF APPEALS OF VIRGINIA


Present:   Judges Annunziata, McClanahan and Senior Judge Coleman


NORTH STAR HOME IMPROVEMENT, INC.
 AND PRINCETON INSURANCE COMPANY

                                                    MEMORANDUM OPINION[*]
v.       Record No. 2350-03-4                            PER CURIAM
                                                      FEBRUARY 17, 2004
JOHN WAYNE HEDDINGS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Joseph F. Giordano; Erin E. Slusser; Semmes, Bowen & Semmes,
              on briefs), for appellants.

              (V.R. Shackelford, III; Shackelford, Thomas & Gregg, P.L.C., on
              brief), for appellee.


       North Star Home Improvement, Inc. and its insurer (hereinafter referred to as "North

Star") contend the Workers' Compensation Commission  erred in finding that John Wayne

Heddings (claimant) proved that (1) he was North Star's employee rather than an independent

contractor at the time of his compensable work-related accidents; and (2) that he sustained

injuries causally related to his September 26 and 27, 2001 compensable injury by accidents.

Pursuant to Rule 5A:21(b), claimant raises the additional questions of whether the commission

erred in (1) refusing to award him temporary total disability (TTD) benefits after March 12,

2002; and (2) denying his Motion to Compel and for Sanctions.  Upon reviewing the record and

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the parties' briefs, we conclude that this appeal is without merit. Accordingly, we summarily affirm the commission's decision. Rule 5A:27.[1]

Employee vs. Independent Contractor

"The Workers' Compensation Act covers employees but not independent contractors." County of Spotsylvania v. Walker, 25 Va. App. 224, 229, 487 S.E.2d 274, 276 (1997). This distinction must be determined from the facts of each case, with the burden upon the person seeking benefits under the Act to prove the relationship contemplated by the Act. Id. at 229-30, 487 S.E.2d at 276; see Code § 65.2-101. Although the commission's factual findings are binding and conclusive on appeal, when they are supported by credible evidence, see James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989), a "[d]etermination of the relationship involves a mixed question of law and fact which is reviewable on appeal." Walker, 25 Va. App. at 230, 487 S.E.2d at 276.

Generally, an individual "'is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed. The power of control is the most significant indicium of the employment relationship.'" Behrensen v. Whitaker, 10 Va. App. 364, 367, 392 S.E.2d 508, 509-10 (1990) (quoting Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982)).

> [T]he right of control includes not only the power to specify the result to be attained, but the power to control "the means and methods by which the result is to be accomplished." An employer-employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work. "[I]f the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor." The extent of

---

[1] Because we summarily affirm the commission's decision, we deny claimant's Motion to Compel and for Sanctions filed with this Court on December 12, 2003.

- 2 -

the reserved right of control may be determined by examining the performance of the parties in the activity under scrutiny.

Intermodal Servs., Inc. v. Smith, 234 Va. 596, 601, 364 S.E.2d 221, 224 (1988) (citations omitted).

Claimant testified that he worked for North Star between April 1999 and September 2001 performing roofing repairs, doing carpentry work, and painting. North Star provided claimant with business cards containing North Star's letterhead and telephone number. Claimant's name was also imprinted on the business cards. Claimant gave the business cards to prospective customers and homeowners when he prepared an estimate for a job. The commission admitted a business card into evidence as Claimant's Exhibit 1.

Claimant used forms generated on North Star's computer to prepare and submit proposals to homeowners, mostly for roofing jobs. Those forms indicated that claimant was North Star's sales representative, and claimant held himself out as such to prospective customers. A blank form and forms both claimant and Gary Hirmer, North Star's owner, had prepared were admitted into evidence by the commission as Claimant's Exhibit 2. Claimant received a commission from North Star if a homeowner accepted a proposal prepared by him.

In general, North Star paid claimant $200 per day, less a fee for workers' compensation of $6.61 per $100 of labor, plus reimbursement for any materials claimant purchased. Claimant kept track of the work he performed by submitting written documentation on a weekly basis to Hirmer or North Star's secretary, indicating the days he worked and the materials he purchased. North Star gave claimant 1099 forms for the wages he earned in 1999, 2000, and 2001.

Hirmer scheduled the jobs claimant worked on and told claimant which jobsite he was to report to on any particular day. Hirmer also provided claimant with directions to jobsites. Sometimes claimant drove to the jobsite on his own, and sometimes he rode with Hirmer.

Hirmer either approved or entered into the contracts with the homeowners on behalf of North Star. Hirmer supervised and reviewed claimant's work and paid for the materials he used on the job, if he purchased them on his own. At times, Hirmer was present on the jobsite and at other times he was not present, but would arrive later. When Hirmer was on the site, he was in charge. Hirmer supplied claimant with a cell phone to keep in touch with him. Claimant supplied his own tools.

In holding that claimant established that he was an employee of North Star at the time of his September 2001 work-related accidents, the commission found as follows:

> [C]laimant testified that Mr. [Gary] Hirmer[, who claimant dealt with at North Star,] exerted a significant degree of control over him by dictating the jobs he was supposed to perform, by furnishing the materials he was to use or by paying for them, by furnishing the claimant with business card's [sic] including North Star's letterhead and telephone number and a cell phone so that the claimant could keep in touch with Mr. Hirmer, and by overseeing and approving the claimant's work. The claimant also testified that he was not paid a set fee for his jobs but, instead, was paid based upon the hours of work that he actually completed. All of these factors, which were undisputed by North Star, support the existence of an employee/employer relationship.

The record contains ample credible evidence, including claimant's testimony and his exhibits, to support the commission's finding that North Star maintained the requisite control over claimant to render him an employee.

Based upon this record, the commission correctly concluded that "[t]he mere fact that North Star may have intended to hire the claimant as an independent contractor is not determinative." Rather, the facts of each case must be examined to determine the status of a claimant at the time of his or her injury. See Walker, 25 Va. App. at 229-30, 487 S.E.2d at 276. The facts of this case established that claimant was North Star's employee at the time of his compensable accidents.

The commission also correctly pointed out that "a professional employee's exercise of independent judgment and discretion in performing his job [is not] fatal to his claim." As we recognized in Purvis v. Porter Cabs, Inc., 38 Va. App. 760, 568 S.E.2d 424 (2002):

> The fundamental test of the employment relationship is the right of the employer to control the details of the employee's work. It is not the actual control exercised, but whether there exists the right and authority to control and direct the particular work or undertaking, as to the manner or means of its accomplishment.
>
> The test is based on the right to control, not the exercise. Most often the distinction is of importance when a skilled or experienced worker appears to be doing his or her job without supervision or interference. By an exercise test, the employee would seem to be uncontrolled; yet, it will often be found that the employer, in any showdown, would have the ultimate right to dictate the method of work if there were any occasion to do so. The right to control does not require the dictation of the thinking and manner of performing the work. It is enough if the employer has the right to direct the person by whom the services are to be performed, the time, place, degree and amount of said services.

Id. at 771-72, 568 S.E.2d at 429-30 (citations omitted).

Causation

North Star contends the commission erred in finding that claimant proved his injuries were causally related to his compensable September 26 and 27, 2001 injury by accidents.[2]

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

---

[2] North Star also argues for the first time on appeal that the commission incorrectly addressed an issue not raised by the deputy commissioner in his December 12, 2002 opinion in determining that claimant's injuries and/or alleged period of disability were causally related to his compensable September 26 and 27, 2001 injury by accidents. North Star did not raise this argument before the commission in a motion for rehearing or a motion for reconsideration so as to allow the commission an opportunity to address it. Accordingly, we will not consider it for the first time on appeal. See Williams v. Gloucester Sheriff's Dep't, 266 Va. 409, 411, 587 S.E.2d 546, 548 (2003); Rule 5A:18.

Claimant testified that on September 26, 2001, while removing a storm window on a jobsite for North Star, he fell off a stepladder, resulting in immediate pain in his lower back. He worked the rest of the day. The next morning, while working for North Star at that same location, claimant twisted his lower and upper back while trying to catch a loose window. He experienced increased pain in his lower back and new pain in his upper back as a result of that incident. He reported both incidents to Hirmer.

On October 1, 2001, Hirmer took claimant to Paola A. Carlton, D.C., Hirmer's chiropractor, for treatment. Carlton noted that claimant "was removing windows on an upper level home when he twisted around and hurt his back." Carlton diagnosed a lumbar sprain with muscle spasms.

Claimant's family physician, Dr. Eric J. Maybach, who had treated claimant in the past, also examined claimant on October 1, 2001. Dr. Maybach noted that claimant injured his back on September 26 and 27. Dr. Maybach recorded a history of claimant "working on a window and he had to stretch between the window and the stepladder and twisted his back." Dr. Maybach also noted that "[t]he next day [claimant] was working on the second floor and he began to fall. He ended up having to grab and ended up w/ a muscle spasm between his shoulder blades." On his Attending Physician's Report, Dr. Maybach noted injuries to claimant's upper and lower back, which he indicated were causally related to the September 26 and 27 work-related accidents. Dr. Maybach prescribed anti-inflammatory and pain medications and physical therapy.

Dr. Victor N. Guerrero, an orthopedic surgeon who began treating claimant on January 8, 2002, noted claimant's pre-existing ten to fifteen-year history of back pain. Dr. Guerrero opined that claimant sustained a lumbosacral strain when he hurt himself on September 26 and 27, 2001.

Dr. Guerrero noted claimant's degenerative disc disease and osteoarthritis, but opined that those conditions "probably predated the injury of September 2001." In his January 8, 2002 Attending Physician's Report, Dr. Guerrero indicated that claimant sustained a sprain/strain of the lumbosacral spine causally related to the September 26, 2001 incident described by claimant.

"The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

Claimant's testimony and his medical records, coupled with the opinions of Drs. Maybach and Guerrero, constitute credible evidence to support the commission's finding that claimant sustained a thoracic and lumbar sprain/strain as a result of his September 26 and 27, 2001 compensable injury by accidents. Because the commission's finding is supported by credible evidence, we will not disturb it on appeal.

### Disability

Claimant contends the commission erred in failing to award him TTD benefits after March 12, 2002. Unless we can say as a matter of law that claimant's evidence sustained his burden of proving his entitlement to TTD benefits after March 12, 2002, the commission's finding is binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

On February 5, 2002, Dr. Guerrero opined that claimant was capable of light-duty work, restricting him from lifting over twenty pounds and from frequent bending or stooping. On March 12, 2002, Dr. Guerrero reported that claimant was improving and could "return to his regular work as tolerated." Based upon Dr. Guerrero's medical records and opinions, the

commission, as fact finder, could reasonably infer that claimant was released to his pre-injury employment as of March 12, 2002.

The commission considered Dr. Christopher Brown's May 2, 2002 vague notation that claimant could "eventually get back to work." However, as fact finder, the commission was entitled to give greater weight to Dr. Guerrero's opinion. Dr. Guerrero treated claimant over a greater time period. In addition, according to claimant, Dr. Brown examined him on one occasion for the sole purpose of obtaining a second opinion. "Medical evidence is not necessarily conclusive, but is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991).

Based upon this record, we cannot find as a matter of law that claimant's evidence sustained his burden of proving entitlement to TTD benefits after March 12, 2002.

Motion to Compel and For Sanctions

In affirming the deputy commissioner's denial of claimant's motion to compel and refusal to impose sanctions against North Star for its failure to timely respond to discovery, the commission found as follows:

> We agree with the Deputy Commissioner's conclusion that the claimant was not prejudiced by the defendants' failure to timely respond to the claimant's discovery because the claimant received unsigned answers to his interrogatories several days before the hearing—adequately apprising the claimant of the defenses being asserted by the defendants in the case. We also note that the Deputy Commissioner gave the claimant the choice of continuing the hearing until such time as signed responses to the discovery were submitted and the claimant declined the continuance.

As do trial courts under Rule 4:12(b), the commission has "'broad discretion in determining what sanctions, if any, will be imposed upon a litigant who fails to respond timely to discovery.'" Rappold v. Indiana Lumbermens Mutual Ins. Co., 246 Va. 10, 14-15, 431 S.E.2d 302, 305 (1993) (quoting Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d 293, 295

(1990)); see Jeff Coal, Inc. v. Phillips, 16 Va. App. 271, 278-79, 430 S.E.2d 712, 717 (1993) (holding that commission has same discretion as a trial court to strike a party's defenses under Rule 4:12).

The record establishes that claimant sustained no prejudice as a result of North Star's failure to timely respond to claimant's interrogatories. Claimant received unsigned interrogatory responses prior to the hearing. Moreover, the deputy commissioner offered claimant the option of continuing the hearing to obtain signed responses, but claimant declined that offer. Under these circumstances, we cannot find that the commission abused its discretion in denying claimant's motion to suppress and refusing to impose sanctions.

We also find no authority to support claimant's argument he was entitled to an award of sanctions against employer due to its failure to timely file a First Report of Accident. Rather, Code § 65.2-902 provides for the assessment of civil penalties against an employer who fails to make any report required by the commission pursuant to the Act, which shall be paid into the Uninsured Employer's Fund. Furthermore, the record reflects that employer filed a First Report of Accident with the commission on March 20, 2002.

For the reasons stated, we affirm the commission's decision.

<u>Affirmed.</u>