# Richmond.

## ELLA BAKER v. NUSSMAN & COX AND AMERICAN MUTUAL LIABILITY INSURANCE.

March 21, 1929.

The opinion states the case.

*John N. Sebrell*, for the appellant

*Patteson, Rives & Cunningham*, for the appellees.

CHICHESTER, J., delivered the opinion of the court.

This is an appeal from an order of the Industrial Commission of Virginia, denying the claim of Ella Baker to compensation for the death of her husband, Madison Baker.

The question involved in the case is a very narrow one, but it is not without difficulty. As we view the issue the sole question is whether Madison Baker was a sub-contractor or whether he was an employee of Nussman and Cox. If the former, the claimant is not entitled to compensation; if the latter, she is. This issue presents a question of law to be determined from the facts.

Nussman and Cox are engaged in the general contracting business in Suffolk. They had made a contract to rebuild a building which had been damaged by fire. As an integral part of this contract, they undertook to take down the wall of the burned building and remove the debris.

Nussman and Cox made a contract with the deceased, Madison Baker, to tear down the wall and remove the debris. He was to be paid a flat sum of $180.00, was to furnish all the teams and tools and to employ and pay his own labor. The original hearing was had before Commissioner Kizer on March 17, 1928.

The findings of fact by the trial commissioner to which the full commission added other facts, which appear later, are substantially as follows: "The claim was heard upon petition of Ella Baker, widow of Madison Baker, who lost his life on September 16, 1927, while doing contract work for the defendants, Nussman and Cox.

"The sole question before the commission is whether Madison Baker was an employee or sub-contractor of the defendants.

"The testimony indicates the widow is fifty-one years of age and resided with her husband at the time of his death. There were other dependents, four grandchildren, the children of a daughter who lived with her parents. Should it be found that Madison

Baker was an employee of Nussman and Cox at the time of the accident, Ella Baker and the four grandchildren would be entitled to compensation.

"The employer has taken the position that Madison Baker was an employee and not a sub-contractor; but what constitutes an employee or sub-contractor is a question of law, depending on whether the facts bring a person within the law's designation of either status. The employer's insurance carrier is ultimately responsible for the payment of such compensation as may be awarded and is, therefore, entitled to set up such defense as the employer himself could use."

Madison Baker had five mules and one horse, two wagons and two scrapers, which he used in his work. His wife testified that he did a lot of work, such as building roads, grading roads and hauling for people. A good portion of his work was done under contract. Several witnesses testified that Baker preferred to do the work under contract, at so much the job, rather than on a per diem basis, since he could use his teams and equipment to better advantage.

It was testified, that, at the time of the accident, the decedent was moving for the defendants, some debris from a building damaged by fire, and that he was furnishing his mules and wagon and had his son and another helper, Emmett Bynum, working for him. Baker paid his son and Bynum for their work. The widow claims her husband usually made about $25.00 to $30.00 per week for his work; but, at the time he was on this job, he does not seem to have informed her exactly what his income was or whether any part of it was an advancement. She does admit, however, that, out of the money paid him, it was necessary for him himself to pay his help. While working on this particular job, he delivered sand to persons other than this defendant.

S. L. Nussman, a defendant, testified that his firm was replacing a building which was destroyed by fire and so badly damaged that it was necessary to take down the front and rear walls to the second floor joists. The roof had fallen in and the debris was to be cleared up and the building repaired and put into condition. Baker was engaged at the price of $180.00 to clear up the debris and take the walls down. Baker was to furnish his own help, teams and wagons, and was not on any hourly or daily basis. This witness testified that Baker hired, kept the time of, and also paid his own helpers. In fact, Nussman, did not know how many helpers Baker had, nor did he interfere with them in any way. The defendants had other men working on this job on an hourly basis, and the only supervision exercised over Baker by the defendants was to the extent that he would work to the advantage of the other men.

The employer testified that, averaging the wage Baker had earned while working for him on previous jobs, he was of the opinon that he earned $27.50 per week. This commission finds that Baker's wages was customarily $27.50 per week, but that for this particular job he was paid a flat contract price of $180.00 for himself, the use of his team and wagon and his two helpers.

Baker had just worked a week on this contract and he was advanced $100.00 at one time, $30.00 another time, and finally $50.00, or the full amount of $180.00. These amounts were placed opposite the name of Madison Baker on the pay-roll of defendants, with the brief explanation that they were "on account," or for "tearing down" or "wrecking building." The record regarding the other employees gives their names, hours of labor performed, rate and amounts paid each.

Nussman further testified that he did not attempt to say what Baker was to do with the money paid the latter for the work; that he employed Baker and his team, and that he directed him what to do, and Baker would have his own men do the work. The only direction given by the defendant was so that Baker should work to the advantage of defendants' employees; but, as to the means employed by Baker or as to the number of helpers he had, that was of no interest to the defendants.

The testimony of other witnesses as duly considered and shows that they knew that Baker was in the contracting business in Suffolk.

Emmett Bynum testified that he was hired by Baker, who also directed him in the work as well as paid him for his services. Nussman never gave any directions to Bynum, but it appears that Baker exercised such control over him as an employer would have over an employee.

Wise Mitchell also testified that he worked for Baker on this job and that Baker was his employer.

"From the above facts together with a careful analysis of all the testimony, this commission makes the finding that Baker was not an employee of Nussman and Cox at the time of the accident of September 16, 1927, which resulted in his death."

"Section 2 (b) of the Workmen's Compensation Act (Acts 1918, chapter 400) describes an employee as any person 'in the service of another under any contract of hire * * * written or implied.' What constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact. See *Stonega Coke and Coal Company* v. *Sutherland*, 136 Va. 489, 118 S. E. 133. While the employer may consider Baker an employee 'be-

cause he hired him,' such an assertion is not binding on this commission. The facts in this case do not show a contract of hire but rather a contract whereby a certain job would be done for a specific sum by a person equipped to do such work according to his own means and method, the other party to the contract being interested solely in the results obtained. The defendants had no control over the number of helpers Baker had, neither did they exercise any control over such helpers. The only control exercised was to have Baker work at such places in the building as would be of advantage and, at least, not a hinderance to the defendants' own employees. The general control over the means and method of doing this work and the number of helpers to be engaged was clearly with Baker himself.

"Baker was a sub-contractor of Nussman and Cox, and, as such, is not covered under the provisions of the Workmen's Compensation Act, which applies only to employees. See *Large* v. *W. M. Ritter Lumber Company*, 6 O. I. C. 194, and *Shupe* v. *R. J. Carter Lumber Company*, 6 O. I. C. 205, wherein the facts and conclusions of law will be found to be as above.

"This claim is, therefore, dismissed on the ground that Baker was not an employee of Nussman and Cox inder section 2 (b) of the Act, but was, in fact, a sub-contractor."

Upon a hearing before the full commission, the facts found by Commissioner Kizer were adopted with the additions.

"1. Baker had been in his employment for seven years, sometimes being paid by the job and at others by the time.

"2. Nussman considered him an employee, and his service was performed in that understanding.

"3. He was carried on the payroll along with the other employees.

"4. He was included among the employees in the lists of those furnished to the Insurance Carrier, and his inclusion therein doubtless formed in part the basis upon which the premium was calculated.

"5. The accident was reported to the Insurance Carrier as an injury to an employee.

"6. In the report of the accident to the Commission, he was declared to be an employee, and notwithstanding the attempt on the part of the Insurance Carrier to get the employers to modify this report, they refused to do so.

"7. Nussman had Cox and other employees working on the premises and on the building at the same time, and Nussman testified that he was himself present supervising and directing the entire work.

"8. Nussman had the right to say when and where Baker should work. See his evidence on pages 25 and 26. The testimony is not before us as we write this, but a reference to the evidence will disclose that this witness, in answer to a question of counsel whether he had the right to say how, when and where Baker should perform the work, he said: 'Yes, I put him there'; and when asked by the commissioner as to what was the extent of the control which he reserved, he said, in substance, that he had the right to tell him when and where to work and to direct him so that there would be no interference with the other work which was being done, and he further testified that he had the right to stop him from that work and put him to doing something else. This condition negatives section 1887 (20) (a), as amended by Acts of 1926, chapter 7, sub-contractorship."

The full commission reached the same conclusion

that Commissioner Kizer reached, but it based its conclusion upon its construction of section 20 (a) of the Workmen's Compensation Act, Code of 1924. This section is as follows: "Where any person (in this section referred to as 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section referred to as 'sub-contractor') for the execution or performance by or under such sub-contractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this act which he would have been liable to pay if the workman had been immediately employed by him.

"Where any person (in this section referred to as 'contractor') contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section referred to as 'sub-contractor') for the execution or performance by or under the sub-contractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him.

"Where the sub-contractor, as the term is hereinbefore used, in turn contracts with still another person (in this section also referred to as 'sub-contractor') for the performance or execution by or under such last sub-contractor of the whole or any part of the work undertaken by the first sub-contractor, then the liability of the owner or contractor, as those terms are

hereinbefore used, shall be the same as the liability imposed by the preceding paragraphs of this sub-section.

"Where compensation is claimed from or proceedings are taken against the owner or contractor, as those terms are hereinbefore used, then, in the application of this act reference to the owner or contractor shall be substituted for reference to the sub-contractor, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the sub-contractor by whom he is immediately employed."

As we understand the opinion of the full commission it holds that complainant is excluded from compensation, under the facts of this case, by section 20 (a) *supra*. That under this section once an employee or sub-contractor engages and pays his own help he is excluded by the terms of the section and it is not necessary to inquire whether he, in this case Baker, answered to the definition of an employee (section 2 (b) of the Act), or to the common law definition of a sub-contractor. In our opinion section 20 (a) never was intended to affect the status of a sub-contractor. It only took in a class of employees (employees of a sub-contractor) and made them eligible to compensation just as the employees of the owner or contractor are eligible under the definition of employees as defined in section 2 (b) of the Act. (Code of 1924, section 1887 (2) (b) ).

This being true, the sole question in the case as determined by Commissioner Kizer is, was Baker an employee or a sub-contractor.

A sub-contractor does not, anywhere, come within the terms of the Act as entitled to compensation. His status now, just as it was before the enactment of

section 20 (a) (Code of 1924, section 1887 (20) (a) ) of the Act is determined by the common law.

■ We have set out the facts as ascertained by the commissioner and with the additions thereto made by the full commission, because it is upon these facts that Baker's relations to the contractor rests. It is not necessary to repeat them here. They do not show the relationship of employee. They do establish, as a matter of law, we think, that Baker was a sub-contractor, as found by the hearing commissioner.

■ "In the law of master and servant the principles of the common law determining when this relationship exists, are well settled. At common law, upon the question of whether the relationship of master and servant exists, there are four elements which are considered; (1) selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action. Roberts & Wallace, Employers' Liability (4th ed.), page 78.

"But, as the last cited author says, the first, second and third of these elements are not essential to the relationship (Idem., pages 79-82). The 'power of control' is the most significant element bearing on the question, in the opinion of this author, gathered by him from the authorities. (Idem., pages 85, 88, 89. See also note 37 L. R. A., pages 38-43.) As said in the case of *Standard Oil Co.* v. *Anderson*, 212 U. S. 215, 29 S. Ct. 252, 33 L. Ed. 480, 'In many of the cases the power of substitution or discharge, the payment of wages, and the circumstances bearing upon the relation, are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control.' Many of the authorities emphasize the importance of

locating in what person resides the power of control, as a test for ascertaining whether one occupies the relationship of master to another." * * *

The facts show that Baker was not under the control of anyone, except that he was required to work his employees so that his work would not interfere with the progress of the work prosecuted by Nussman and Cox.

He was not controlled in his method and means of work, and therefore was not under a contract of hire, express or implied, within the meaning of section 2 (b), but was a sub-contractor, and therefore not an employee, and his widow is not entitled to compensation for his injury and death.

The award of the Industrial Commission should be affirmed.

*Affirmed.*