COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judge Baker and Senior Judge Cole
Argued at Richmond, Virginia


UNINSURED EMPLOYER'S FUND

v.    Record No. 2638-95-2

GEORGE BARNETT,
 WILLIAM A. HAWTHORNE,
 W.A. HAWTHORNE LOGGING, INC.,
 UPTON TIMBER, INC. AND
 AETNA CASUALTY & SURETY COMPANY              MEMORANDUM OPINION[*]
                                               BY MARVIN F. COLE
WILLIAM A. HAWTHORNE AND                        JULY 9, 1996
 W.A. HAWTHORNE LOGGING, INC.

v.    Record No.  2902-95-2

GEORGE BARNETT, UPTON TIMBER, INC.,
 AETNA CASUALTY & SURETY COMPANY AND
 UNINSURED EMPLOYER'S FUND


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Christopher D. Eib, Assistant Attorney
               General (James S. Gilmore, III, Attorney
               General; Richard L. Walton, Jr., Senior
               Assistant Attorney General; John J. Beall,
               Jr., Senior Assistant Attorney General, on
               brief), for Uninsured Employer's Fund.

               Ruth Nathanson Carter (Charles F. Midkiff;
               Midkiff & Hiner, P.C., on brief), for William
               A. Hawthorne and W.A. Hawthorne Logging, Inc.

               F. Brawner Greer (John M. Oakey, Jr.;
               McGuire, Woods, Battle & Boothe, L.L.P., on
               brief), for Upton Timber, Inc. and Aetna
               Casualty & Surety Company.

               B. Mayes Marks, Jr. (B. Mayes Marks, Jr.,
               P.C., on brief), for George Barnett.

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

The Uninsured Employer's Fund ("the Fund"), William A. Hawthorne ("Hawthorne") and W.A. Hawthorne Logging, Inc. ("Hawthorne Logging") appeal a decision of the Workers' Compensation Commission awarding compensation to George Barnett ("Barnett"). The Fund contends that the commission erred in finding that Upton Timber, Inc. ("Upton") was not Barnett's statutory employer on the ground that Upton was not in the same trade, business, or occupation as Hawthorne and Hawthorne Logging. (Record No. 2638-95-2). Hawthorne and Hawthorne Logging contend that the commission erred in ruling that (1) Barnett was their employee; and (2) Upton was not Barnett's statutory employer. Hawthorne also contends that the commission erred in entering the award against him. (Record No. 2902-95-2). For the reasons set forth herein, we affirm the commission's decision as to all issues raised by the parties, except we vacate the award entered against Hawthorne and W.A. Hawthorne Logging, Inc. and remand for the commission to determine whether the award should be given against William A. Hawthorne as an individual or W.A. Hawthorne Logging, Inc., a corporation.

## Facts

On May 13, 1994, Hawthorne, Barnett and Barnett's co-workers were cutting timber. Hawthorne was operating the skidder. Barnett sustained multiple injuries when he was struck by a tree limb. Hawthorne believed that the tree that hit Barnett was charcoal wood.

At the time of the accident, Barnett had worked for Hawthorne Logging for approximately one year. He worked five days per week, eight and one-half hours per day, averaging $250 per week. Barnett stated that Hawthorne paid him every Friday in cash. He was paid $50 for each load of timber hauled. At 6:30 a.m. every day, Barnett, along with his co-workers, arrived at Hawthorne's home and rode together in Hawthorne's truck to the work site. Hawthorne provided the trucks, saws, and equipment and acted as Barnett's boss, having the power to fire him.

On February 25, 1994, Barnett and his co-workers, Steve Matthews and James Taylor, signed a document acknowledging that they were independent contractors and working under contract with W.A. Hawthorne Logging, Inc., a Virginia corporation. Hawthorne Logging agreed to pay them for each load of wood they hauled. According to the testimony of Barnett, he could not read the document and no one read or explained it to him before he signed it. He further testified that Hawthorne told him to sign the document for tax purposes and never mentioned the words "independent contractor."[1]

After Barnett signed the February 25, 1994 document, the work and conditions of the job he performed did not change. Barnett still worked the same days and hours, used the same transportation and equipment, was paid in the same manner, and

---

[1] On February 18, 1994, Barnett also signed a document containing the hand-written words, "We the undersigned are working for ourselves."

3

was still subject to being fired by Hawthorne.

Matthews testified that in February 1994, he, Barnett, and Taylor all agreed to work for Hawthorne as independent contractors rather than employees. He confirmed that Hawthorne paid them each Friday, by the load, and they divided the money. Matthews also stated that the manner in which he and the other workers performed work for Hawthorne and got paid by Hawthorne did not change after they signed the February 25, 1994 document. The only difference was that they received one check, which was cashed and divided among the men, rather than each of them receiving an individual check.

Taylor testified that before February 25, 1994, he worked as Hawthorne's employee and, after that date, he worked as an independent contractor. He acknowledged that he used Hawthorne's equipment on the job at all times.

Hawthorne, president of W.A. Hawthorne Logging, Inc., testified that his corporation is in the business of cutting and hauling timber and selling charcoal wood and pulp wood. Hawthorne contended that he explained the February 25, 1994 document to Barnett before Barnett signed it. Hawthorne stated that he told Barnett that, as of that date, he and the other workers were no longer employees, because Hawthorne could not afford to pay for workers' compensation insurance, and they would work as independent contractors. Hawthorne testified that after February 25, 1994, he paid the workers $50 or $60 per load,

4

depending upon who hauled the load. After February 25, 1994, Hawthorne gave one check to Matthews or Taylor, which they signed. Hawthorne would then cash the check and give the money to the workers to divide up. After February 25, 1994, Hawthorne's accountants reported Barnett's wages on a 1099 form.

Hawthorne admitted that he appeared on the work site almost every day to check on the workers. He also admitted that he told them what to do and corrected their mistakes. Hawthorne used and insured the same trucks and equipment both before and after Barnett, Matthews, and Taylor signed the February 25, 1994 document. Hawthorne paid for gas and necessary repairs for the trucks and equipment used on the jobs performed by Hawthorne Logging. Hawthorne also admitted that, both before and after the workers signed the February 25, 1994 document, he was under the same agreement to pay them $50 or $60 per load. Both before and after the February 25, 1994 document was signed, Hawthorne negotiated with Richard Short, owner of Upton, for contracts to cut timber. Both before and after the February 25, 1994 document was signed, the workers, including Barnett, worked on job sites contracted by Hawthorne with Upton, using Hawthorne's vehicles and equipment. Barnett, Taylor, Matthews, and two others worked for Hawthorne before the February 25, 1994 document was signed.

On the date of Barnett's accident, Hawthorne had contracted with Upton to cut timber for Upton on a specific tract of land. Hawthorne believed he got paid for the charcoal wood he cut and

hauled that day, and he then in turn paid Upton. The May 17, 1994 receipt covering loads of logs paid for by Upton to Hawthorne or sold directly as charcoal wood by Hawthorne reflected that, between May 11, 1994 and May 16, 1994, Hawthorne sold nine loads of charcoal wood to Imperial Products, which paid Hawthorne directly. Barnett did not know of the existence of Upton or its relationship with Hawthorne until his January 1995 deposition.

Richard Short, a one-third owner and employee of Upton, testified that he purchases standing timber for Upton. Upton's business consists of purchasing stands of timber and employing logging companies to cut and haul the logs to mills. In May 1994, Upton employed one secretary and two foresters. Upton did not employ any workers who cut or hauled timber, nor did Upton own any equipment to perform such work.

There were several ways Upton generated income as of May 1994. First, it would buy and sell a tract of timber outright. Second, Upton would enter into a stumpage agreement with a logging company. Such an agreement required that the logging company buy the timber from Upton, which the logging company then cut and sold directly to a mill. Third, Upton would have an agreement with the logging company for it to cut and haul logs owned by Upton to a mill for which the mill paid Upton, who then took a commission and paid the logging company the remainder.

Upton never entered into a written contract with Hawthorne.

6

At various times, Upton entered into all three payment arrangements with Hawthorne. A May 17, 1994 receipt reflected money paid by Upton to Hawthorne for that week. The May 17, 1994 receipt reflected that, between May 11, 1994 and May 16, 1994, Hawthorne bought nine loads of wood from Upton, which Hawthorne hauled to Imperial Products, and one load of wood from Upton, which Hawthorne hauled to Chesapeake. The mills paid Hawthorne for these loads, and Hawthorne paid Upton for the logs he had cut and delivered to these mills. Hawthorne paid Upton for these loads through deductions from the total amount Upton owed Hawthorne for that week. Short stated that three receipts, dated May 13, 1994, each represented a load of charcoal wood hauled by Hawthorne to Imperial Products on that date, for which Imperial Products paid Hawthorne, and Hawthorne paid Upton. Based upon the description of the tree that hit Barnett, Short believed it was intended for charcoal. Therefore, he believed that the tree would have been one purchased by Hawthorne from Upton and hauled and sold by Hawthorne to Imperial Products, who paid Hawthorne. Upton had no arrangement with Imperial Products at the time of Barnett's injury.

The deputy commissioner ruled that Barnett was an employee of Hawthorne and Hawthorne Logging at the time of his May 13, 1994 accident. He did not explain how Barnett could have been employed by both William A. Hawthorne as an individual and W.A. Hawthorne Logging, Inc. at the same time to do the same work for

7

the same pay. The deputy commissioner found that the February 25, 1994 agreement signed by Barnett was not controlling, where, in this case, the manner in which Hawthorne controlled the work, the manner in which the men were paid, and the manner in which they performed their work did not change after they signed the agreement. The deputy commissioner also held that Upton was not Barnett's statutory employer under Code § 65.2-302, finding that Upton was not in the same trade, business, or occupation as Hawthorne Logging. He based his decision upon the evidence that Upton owned no trucks or cutting equipment and did not have any employees who cut or hauled timber to the mills. The deputy commissioner entered an award in favor of Barnett and against Hawthorne and Hawthorne Logging. The full commission affirmed the deputy commissioner's decision as to all issues.

## I. Upton's Status as Statutory Employer

"The test [for determining whether an owner or contractor is a statutory employer] is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors."

Shell Oil Co. v. Leftwich, 212 Va. 715, 722, 187 S.E.2d 162, 167 (1972) (citation omitted). The Shell Oil test has two prongs: the "normal-work test" and the "subcontracted fraction test."

8

Cinnamon v. International Business Machines Corp., 238 Va. 471, 476, 384 S.E.2d 618, 620 (1989). The facts of this case did not satisfy either of these tests.

Upton did not have any employees who normally carried out the type of work which caused Barnett's injury, i.e., the cutting of standing charcoal wood trees. In fact, Upton never had employees who cut timber. Upton did not normally cut and haul timber through its employees. This work, although necessary to Upton's business, was done by independent contractors, such as Hawthorne Logging. Therefore, the evidence did not satisfy the "normal-work test."

Furthermore, because the undisputed facts showed that Upton was not obligated by a main contract with an owner to complete a whole project, the "subcontracted fraction test" did not apply. No contracts existed between Upton and Imperial Products or any other mill requiring Upton to cut timber and haul it to a particular mill. Most importantly, at the time of Barnett's accident, Hawthorne Logging was not performing work for Upton. Hawthorne Logging bought the charcoal trees from Upton pursuant to the stumpage agreement, cut them, and hauled them to the mill. The mill paid Hawthorne Logging directly for the cut wood. Upton received no money from and had no relationship with these mills. Selling charcoal trees, such as the one that injured Barnett, was Hawthorne Logging's business, not Upton's. These undisputed facts provide credible evidence to support the

9

commission's decision that Upton was not Barnett's statutory employer.

II. Barnett's Status as Employee or Independent Contractor

"What constitutes an employee is a question of law; but whether the facts bring a person within the law's designation, is usually a question of fact." Baker v. Nussman, 152 Va. 293, 298, 147 S.E. 246, 247 (1929). On appellate review, the findings of fact made by the commission will be upheld when supported by credible evidence. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

Generally, an individual "'is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed. The power of control is the most significant indicium of the employment relationship.'" Behrensen v. Whitaker, 10 Va. App. 364, 367, 392 S.E.2d 508, 509-10 (1990) (quoting Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982)). The employer-employee relationship exists if the power to control includes not only the result to be accomplished, but also the means and methods by which the result is to be accomplished. Id. at 367, 392 S.E.2d at 510.

The testimony of Barnett, Hawthorne and the other employees provides ample credible evidence to support the commission's finding that, notwithstanding the February 25, 1994 agreement, Hawthorne Logging retained the right to control not only the

10

result to be accomplished, but also the means and methods by which the result was accomplished. Hawthorne Logging negotiated contracts for hauling the cut timber. Hawthorne provided and maintained the equipment and vehicles, transported the workers, corrected their mistakes, regulated their hours, worked on the job sites with them, paid them according to the number of loads they hauled, and retained the right to fire them. Accordingly, the commission did not err in ruling that Barnett was an employee and not an independent contractor.

### III.  Hawthorne's Liability

Finally, we consider whether the commission erred in entering the award against both William A. Hawthorne individually and W.A. Hawthorne Logging, Inc., a Virginia corporation. Barnett's counsel advised the commission and other parties to the proceeding by letter dated July 29, 1994, that William A. Hawthorne was incorporated at the time of Barnett's injury, and requested that the corporation be added as a party defendant. This was done as requested.

The parties did not develop the issue of the correct employer to any great extent before the deputy commissioner. The deputy commissioner made an award against William A. Hawthorne and W.A. Hawthorne Logging, Inc. without any finding of facts as to the actual employer and without explanation. Throughout the hearing before the deputy commissioner, the employer was referred to as William A. Hawthorne or W.A. Hawthorne Logging. During

11

William A. Hawthorne's testimony, he referred to his actions with the pronoun "I," making no differentiation between William A. Hawthorne personally and William A. Hawthorne as president of the corporation. Because the deputy commissioner and counsel for the parties made no effort to determine whether Hawthorne and other witnesses were speaking of Hawthorne as individual owner of Hawthorne Logging or in his capacity as president of W.A. Hawthorne Logging, Inc., we are unable to make such a determination from the record before us. There is credible evidence in the record to support both positions.

The independent legal existence of a corporation is a basic principle of corporate law and we cannot ignore this separate existence except in extraordinary circumstances and then "only when necessary to promote justice." O'Hazza v. Exceutive Credit Corp., 246 Va. 111, 115, 431 S.E.2d 318, 320 (1993). "[O]ne who seeks to [ignore] the corporate entity must show that the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." Id. This requires a factual examination of the circumstances surrounding the corporation and the acts in question. Id. at 115, 431 S.E.2d at 321. Accordingly, we remand this case for the commission to make a factual determination, hearing additional evidence if necessary, to decide whether the claimant, George Barnett, was an employee of William A. Hawthorne

12

or W.A. Hawthorne Logging, Inc. on the date of the accident, May 13, 1994, and to enter an appropriate award in accordance with its finding.

For these reasons, we affirm the commission's decision except upon the issue whether the award should be entered against William A. Hawthorne or W.A. Hawthorne Logging, Inc.

<u>Affirmed in part, vacated and remanded in part.</u>

13