COURT OF APPEALS OF VIRGINIA


Present:  Judges Fitzpatrick, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


ALICE E. WAGGLE

v.   Record No. 0556-96-4

JOHN M. LANG & SUSAN A. LANG, t/a
 KILLAHEVLIN
                                    MEMORANDUM OPINION[*] BY
and                                   JUDGE CHARLES H. DUFF
                                        NOVEMBER 19, 1996
SHELLEY A. MARTIN

v.   Record No. 0557-96-4

JOHN M. LANG & SUSAN A. LANG, t/a
 KILLAHEVLIN


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Jerry O. Talton (Nikolas E. Parthemos;
            Prosser, Parthemos & Bryant, P.C., on
            briefs), for appellants.

            Dana L. Rust (John M. Oakey, Jr.; Matthew S.
            Bryant; McGuire, Woods, Battle & Boothe,
            L.L.P., on briefs), for appellees.



     Alice E. Waggle ("Waggle") and Shelley A. Martin ("Martin")

appeal a decision of the Workers' Compensation Commission denying

their applications for compensation benefits.  Waggle and Martin

contend that the commission erred in finding that they were not

employees of John M. Lang and Susan A. Lang, t/a Killahevlin

pursuant to the provisions of the Workers' Compensation Act ("the

Act").  Finding no error, we affirm the commission's decision.

--------------------------------

     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

When Martin's and Waggle's accident occurred on May 25, 1994, they were working for the Langs. Their jobs involved stripping paint from a tower wall on one of the buildings at Killahevlin, a bed and breakfast owned by the Langs. Martin and Waggle had been working on the tower for two days prior to May 25, 1994. John Lang had instructed Martin and Waggle to strip the paint off the entire outside wall on the tower. As Martin and Waggle stood on an eight by four foot porch and worked opposite each other stripping paint from the upper wall, the porch collapsed, causing them to fall to the ground. Martin and Waggle sustained multiple injuries.

Martin began working for the Langs in April 1994. She worked five days per week, eight hours per day, and earned $7.50 per hour. The Langs usually paid her by check each Friday, but on occasion gave her money on the day she worked. At times, the Langs paid Martin in cash.

From April 1994 until May 25, 1994, Martin scraped and sanded radiators, windows and doors at Killahevlin. Martin stated that at the time of her accident, the Langs also employed Henry Sloane, Melvin Baugher, Tommy Daniels, Alice Waggle, and others whom she could not remember. Martin stated that John Lang showed her how to strip walls.

Waggle testified that she began working for the Langs in early 1993. She sanded, stripped paint, and, at times, cleaned rooms. She may also have worked during this period of time for

2

one or two weeks for Melvin Baugher.  Waggle stated that she worked forty hours per week, Monday through Friday, and she earned between $7 and $10 per hour, depending on the difficulty of the job.  When Waggle first started working for the Langs, they paid her in cash, but later paid her by check on a weekly basis.  Waggle stated that John Lang set her work hours, provided all her tools, told her what to do when she got to work, was present on the jobsite, controlled her work performance, and showed her how to perform various job tasks.  Waggle stated that the Langs employed several other individuals at the time of her accident.

Wendy Clooney testified that she accepted telephone calls at her home on behalf of Waggle.  Clooney stated that John Lang called her home ten to fifteen times to tell Waggle when to be at work.

John Lang testified that Killahevlin is a bed and breakfast, which he and his wife have been renovating for five-and-one-half years.  They also live in the house.  John Lang stated that he hires various contractors, carpenters, and day laborers to work on the renovations.  He did not withhold taxes or social security for any of these individuals.  John Lang claimed that he did not supervise the independent contractors who helped renovate the house.  He characterized these individuals as casual laborers because they did not have regular work schedules.  Instead, they worked only when the Langs needed them.

3

John Lang testified that he hired Waggle in 1993 and paid her $7.50 per hour.  He stated that Waggle's main task was to sand woodwork, and that Waggle did not work continuously for him up until the time of the accident, but that she also worked for Baugher.  John Lang stated that Waggle first brought Martin to the jobsite.  He stated that he paid Martin $7.50 per hour and she did not work a set schedule.  Martin and Waggle kept track of the hours they worked by writing them on a calendar provided by the Langs.  John Lang denied that he supervised Martin and Waggle when they performed work on the tower.  He admitted that in order to make the bed and breakfast profitable he had to renovate the house, but asserted that he did not run a home renovation business.  He admitted that he provided all of Waggle's and Martin's tools.  He also stated that he probably told Waggle and Martin to strip the paint off the tower and suggested they use a product called "Peel-Away."  He had shown Waggle how to use Peel-Away on a previous occasion.

> Code § 65.2-101 defines "employee" as follows:
> 1. a. Every person . . . in the service of
> another under any contract of hire or
> apprenticeship, written or implied, except
> (i) one whose employment is not in the usual
> course of the trade, business, occupation or
> profession of the employer or (ii) as
> otherwise provided in subdivision 2 of this
> definition.
>
>         *    *    *    *    *    *    *
> 2.  "Employee" shall not mean:
>
>         *    *    *    *    *    *    *

4

e.  Casual employees.

Waggle and Martin bore the burden of proving that they were employees of the Langs.  Craddock Moving & Storage Co. v. Settles, 16 Va. App. 1, 3, 427 S.E.2d 428, 430 (1993), aff'd, 247 Va. 165, 440 S.E.2d 613 (1994).

"What constitutes an employee is a question of law; but whether the facts bring a person within the law's designation, is usually a question of fact."  Baker v. Nussman, 152 Va. 293, 298, 147 S.E.2d 246, 247 (1929).  "Deciding what is the trade, business, or occupation of an entity is a 'mixed question of law and fact' and is a question that 'does not readily yield to categorical or absolute standards.'"  Henderson v. Central Tel. Co. of Virginia, 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987) (quoting Bassett Furniture v. McReynolds, 216 Va. 897, 902, 224 S.E.2d 323, 326 (1976)).

The commission found that the Langs were not in the business of purchasing and restoring historical properties; rather, they were in the business of operating a bed and breakfast.  The commission held that "the preparation of the proper facilities to conduct that business by restoration or renovation does not constitute 'periodic, regular, or permanent' activities that are part of the usual course of the trade, business, or occupation of the employer."  The commission found that although the renovation was essential to the establishment of the Langs' bed and breakfast, it was not part of the Langs' regular and permanent

5

operations. Thus, the commission agreed that Waggle and Martin were not independent contractors, yet they did not qualify as "employees" under Code § 65.2-101.

In Shell Oil Co. v. Leftwich, 212 Va. 715, 187 S.E.2d 162 (1972), the Supreme Court set forth the test this Court must use to determine whether Waggle and Martin were engaged in the Langs' trade, business, or occupation:

> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in the business, normally carried on through employees rather than independent contractors.

Id. at 722, 187 S.E.2d at 167. This test "works best in cases involving private businesses because those entities often define their trade, business, or occupation by their conduct. With regard to such entities, what they do on a day-to-day basis provides a reasonably reliable indicator of their trade, business, or occupation." Henderson, 233 Va. at 383, 355 S.E.2d at 599.

In Mims v. McCoy, 219 Va. 616, 248 S.E.2d 817 (1978), the Supreme Court held that the work performed by a carpenter in doing renovations for a farmer on his riverfront cabin was in no way connected to the farmer's usual occupation, and therefore, the commission erred in ruling that the carpenter was an employee

6

covered by the Act.  Id. at 619, 248 S.E.2d at 819.

In this case, although the record established that the work Waggle and Martin performed for the Langs was not casual, and that John Lang maintained a degree of control over the means and methods Waggle and Martin used to accomplish their work, the evidence failed to show that Waggle's and Martin's work fell within the Langs' usual trade, business, or occupation.  Thus, the commission did not err in finding that Waggle and Martin were not "employees" covered under the Act.  The work Waggle and Martin performed, i.e., renovation and restoration of the Killahevlin buildings, was not part of the Langs' regular or permanent business of running a bed and breakfast inn nor did the evidence prove that the Langs expected the bed and breakfast employees to perform such work.

For the reasons stated, we affirm the commission's decision.

Affirmed.