COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Ortiz and Lorish
Argued at Norfolk, Virginia


THE UNINSURED EMPLOYER'S FUND

v.     Record No. 1115-24-1

VANESSA HUGHES

MEMORANDUM OPINION* BY
JUDGE DANIEL E. ORTIZ
JULY 8, 2025


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Benjamin A. Ellis (Marilyn N. Harvey; Clarke, Dolph, Hull &
Brunick, P.L.C., on briefs), for appellant.

Bradford E. Goodwin (Reid Goodwin, PLC, on brief), for appellee.


The Uninsured Employer's Fund appeals the Commission's award to Vanessa Hughes for

temporary total disability and medical benefits for a right knee injury sustained in a January 6,

2022 work accident. The Fund argues that Hughes failed to prove she was an employee of the

uninsured employer, Rose Holistic Homecare, LLC. It also contends that Hughes failed to prove

a compensable injury by accident arising out of her employment. Finding no error, we affirm the

Commission's award.

## BACKGROUND[1]

Hughes worked as a patient care assistant for Rose Holistic Homecare, LLC ("Rose"), a

home healthcare business owned by Takesha Parker. Hughes helped Rose's clients in their homes

with feeding, clothing, bathing, cleaning, distributing medication, taking vital signs and blood sugar

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] We state the facts in the light most favorable to Hughes, the prevailing party before the
Commission. *City of Charlottesville v. Sclafani*, 300 Va. 212, 223 (2021).

levels, and providing transportation to doctor's appointments. Rose's hiring manager, Barbara Welch, hired Hughes for the position. Rose's scheduling manager, Marquita Smith, set Hughes's work hours and communicated with Hughes through a mobile phone application. The phone application showed Hughes daily when, where, and how long she was scheduled to work and her days off. Hughes logged the hours she worked through this application. Rose required Hughes to wear certain clothing: closed-toed shoes, scrub pants, and a scrub top. Hughes wore her own scrubs but did not supply any work-related tools, such as a stethoscope. Rose also issued Hughes a badge identifying her association with Rose, which she was required to wear. Rose gave Hughes gloves, face masks, and hand sanitizer and mandated that she wear them. Hughes had undergone some CPR training before working for Rose, but she had no formal training in being a personal care assistant. Hughes had prior personal experience helping care for a paraplegic uncle, and she also attended school to become a massage therapist. Rose informed Hughes that it would set up training classes in June, which never took place. Hughes worked for Rose approximately one month before her January 6, 2022 workplace accident.

Welch assigned Hughes two clients who lived in the same home.[2] Welch gave Hughes background on the clients' needs and set the standards for the tasks she was to accomplish each day; Hughes decided the daily routine and care structure. Hughes helped her clients with bathing, dressing, and personal hygiene. She prepared meals and delivered them to the clients' rooms, and she checked one client's blood sugar and pressure. If she could not accomplish all her tasks during the hours she worked, Hughes ensured that the necessities were completed, such as feeding, bathing, and medication—the minimum standards Rose set. Hughes could not take her clients out of the home without first obtaining permission from Rose. To obtain permission, Hughes called the office

---

[2] Others lived in the home who were not Rose clients and for whom Hughes had no responsibilities.

- 2 -

and spoke with Welch, who authorized or denied the request.  To take a client from the home, Rose also required insurance and that Hughes have a cell phone to contact Rose in case anything happened.  Hughes generally worked between 8 and 12 hours daily, during varying days of the week, for a total of between 40 to 47 hours weekly.  Rose paid Hughes $11 per hour and withheld taxes from her pay.

The Rose clients whom Hughes was assigned to help lived on the second floor of a two-story house.  On January 6, 2022, as Hughes was walking down the stairs after checking on her clients, she tripped on the carpeted stairs, fell, and injured her right knee.  Hughes saw the carpet move and additionally described the carpet as being "messed up," sticky in places, dirty, worn, and loose.  She said her foot tripped over the carpet and described her foot getting stuck in the carpet.  She testified that the carpet was not attached properly or flat, that she could not move her foot, and that she "f[e]ll down the steps."  She did not see anything on her shoe or the step where she fell.  Hughes called Rose to report her injury, and Welch told her to go to the hospital.  Hughes left work and went to the hospital.

At Harbour View Medical Center on January 6, 2022, Hughes saw Dr. Kenneth Brown, who noted Hughes's history of intermittent right knee pain following an ACL tear years earlier.  Dr. Brown's medical note indicates that earlier that day, "while walking down steps," Hughes heard a "crunch sound" in her right knee followed by severe pain.  According to the note, Hughes denied having pain in her right hip or right ankle.  Dr. Brown diagnosed an ACL tear; he placed Hughes in a knee immobilizer, gave her crutches, and instructed her to follow up with an orthopedist.

Hughes saw an orthopedist, Dr. Aaron Marlow, on January 14, 2022.  Dr. Marlow noted that Hughes presented "with right-sided knee pain" and "she was at work and fell down some stairs."  She followed up with Dr. Marlow on February 9, 2022, and he noted that she injured her right knee

"at work on stairs." Dr. Marlow referred her to Dr. Ernesto Luciano-Perez for a surgical consultation and excused Hughes from work until further notice.

On February 10, 2022, Hughes saw Dr. Luciano-Perez and reported that "her knee gave out while walking down the stairs" at work. On March 23, 2022, Dr. Luciano-Perez performed reconstruction surgery on Hughes's right knee ACL. Hughes continued to work until her surgery, but she did not return to work for Rose after her surgery.

Hughes filed a claim on April 18, 2022, seeking medical and disability benefits. Among other defenses asserted at the hearing before the deputy commissioner, the Fund contended that Hughes was not an employee of Rose and that her injury did not arise out of her employment. The deputy commissioner accepted into evidence medical and wage records, and Hughes testified in support of her claim. A Rose representative failed to appear for the hearing.

Following the hearing, the deputy commissioner concluded that Hughes had met her burden of proving both that she was an employee of Rose and that her injury arose out of her employment, finding Hughes's testimony credible. In ruling on the employee versus independent contractor issue, the deputy commissioner found that Hughes's testimony established that Rose "withheld sums from her wages for her federal tax liability, mandated certain items of clothing that she was required to wear, issued her a badge that she was also required to wear that identified her association with the employer, and set standards for her work performance." He also found that Hughes had demonstrated "that the employer directed when, where, and how long she performed her duties by instructions provided through a cellphone application." The deputy noted that "[a]lthough the employer did not direct every task Hughes performed in providing services to the individuals the employer directed her to assist, she persuasively proved that the employer reserved the right to dictate how she provided these services."

Addressing whether Hughes's accident arose out of her employment, the deputy commissioner relied on her testimony that, "while descending stairs that she regularly traversed in providing home healthcare services to two individuals, she fell when she tripped on loose and dirty carpet covering the stairs." He noted that, although Hughes conceded she found no substance on the soles of her shoes and that "the histories in her medical records do not strictly track her testimony concerning the mechanism of the fall, . . . her credible testimony concerning the worn and dirty conditions of the carpet on the stairs [was] sufficient" to constitute a "condition of the workplace," which established that she had "suffered a compensable injury by accident."

On review, the Commission affirmed, relying on the deputy commissioner's findings that Rose had the required power of control over Hughes. The Commission noted that Rose "directed when, where, and how long she performed her duties by instructions provided through a cellphone application." It further noted that Rose provided Hughes with gear and promised Hughes future training, and Hughes obtained permission from the office before she took a patient out of the home. The Commission considered the fact that Hughes knew how to care for patients based on her "life background experiences," decided each patient's daily routine and care structure, and provided her own scrubs, but it nonetheless concluded that Hughes had proven her status as an employee.

In assessing whether Hughes's accident arose out of her employment, the Commission found that "she fell when she tripped on loose and dirty carpet covering the stairs" and that the fall is what caused the injury to her right knee. The Commission also noted that Hughes testified that "'the carpet is messed up . . . it was loose carpet, worn carpet' and not properly attached." Considering Hughes's testimony that "she 'was coming down the steps' [when she] tripped on the carpet," the Commission concluded that the hazard was the loose carpet catching Hughes's

foot and causing the incident. The Commission also ruled that Hughes's medical records' lack of a reference to her foot catching on loose carpet was not fatal to her claim.

The Fund appeals.

STANDARD OF REVIEW

An award of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A); *City of Charlottesville v. Sclafani*, 300 Va. 212, 222-23 (2021). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). This includes determining causation, "which 'is a factual finding.'" *Dominion Coal Corp. v. Bowman*, 53 Va. App. 367, 374 (2009) (quoting *Pruden v. Plasser Am. Corp.*, 45 Va. App. 566, 576 (2005)). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." *Jeffreys*, 297 Va. at 87 (quoting *Caskey*, 225 Va. at 411). Our deference to the Commission's fact finding necessarily requires us to construe the evidence "in the light most favorable to the prevailing parties before the Commission." *Id.* But the Commission's "legal determinations are not binding on appeal and will be reviewed *de novo*." *Roske v. Culbertson Co*., 62 Va. App. 512, 517 (2013) (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

"A claimant seeking benefits under the Workers' Compensation Act bears the burden of establishing that he is an employee as that term is defined in Code § 65.2-101." *Creative Designs Tattooing Assocs. v. Estate of Parrish*, 56 Va. App. 299, 307 (2010). "What constitutes an employee is a question of law; but, whether the facts bring a person within the law's designation, is usually a question of fact." *Intermodal Servs., Inc. v. Smith*, 234 Va. 596, 600 (1988) (quoting

*Baker v. Nussman & Cox*, 152 Va. 293, 298 (1929)).  Determining the worker's relationship to the employer "involves a mixed question of law and fact which is reviewable on appeal."  *County of Spotsylvania v. Walker*, 25 Va. App. 224, 230 (1997).  Whether an injury arises out of and in the course of employment is also a mixed question of law and fact reviewable on appeal.  *Park Oil Co. v. Parham*, 1 Va. App. 166, 168 (1985).

ANALYSIS

I.  The record supports the Commission's finding that Hughes was an employee of Rose, rather than an independent contractor.

With exceptions not applicable here, the Workers' Compensation Act defines an employee as any person "in the service of another under any contract of hire or apprenticeship, written or implied, whether lawfully or unlawfully employed."  Code § 65.2-101.  The Act "covers employees but not independent contractors."  *Walker*, 25 Va. App. at 229.  "Whether the existing status is that of an employee or an independent contractor is governed, not by any express provision of the [Act], but by common law."  *Creative Designs*, 56 Va. App. at 308 (quoting *Hann v. Times-Dispatch Pub. Co.*, 166 Va. 102, 105 (1936)).  "No hard and fast rule can be laid down for ascertaining whether the status is one or the other.  It must be determined from the facts of the particular case in the light of well settled principles."  *Id.* (quoting *Hann*, 166 Va. at 105-06).

Our Supreme Court has defined an "independent contractor" as

> a person who is employed to do a piece of work without restriction as to the means to be employed, and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results.

*Id.* (quoting *Epperson v. DeJarnette*, 164 Va. 482, 486 (1935)).  In determining the worker's relationship to the employer, the court considers several factors: "(1) selection and engagement of the employee, (2) payment of wages, (3) power of dismissal, and (4) power of control of the employee's action."  *Behrenson v. Whitaker*, 10 Va. App. 364, 366 (1990).  "The fourth factor, the

- 7 -

power to control, is determinative." *McDonald v. Hampton Training Sch. for Nurses*, 254 Va. 79, 81 (1997); *see Hamilton Trucking v. Springer*, 10 Va. App. 710, 715 (1990) ("[T]he power of substitution or discharge, the payment of wages, and the circumstances bearing upon the relation, are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control." (quoting *Stover v. Ratliff*, 221 Va. 509, 512 (1980))). "[A]n employer-employee relationship exists only if the control reserved includes the power to control, not only the result to be accomplished, but also the means and methods by which the result is to be accomplished." *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 98 (1982).

Although the control factor is paramount, additional factors, such as whether there are deductions from compensation, whether the employer or the worker supplies the instrumentalities and tools, and how hours of work are determined, are considerations as well. *Creative Designs*, 56 Va. App. at 309-10. "[T]he measure of compensation is also important[,] for where it is based on time or piece the workman is usually a servant, and where it is based upon a lump sum for the task he is usually a contractor." *Id.* at 309 (quoting *Ross v. Schneider*, 181 Va. 931, 940 (1943)).

Here, credible record evidence supports the Commission's findings of fact and establishes that Hughes was an employee who Rose had the power to control, not an independent contractor. Rose hired Hughes and assigned her the clients she cared for. Rose set her hours and communicated the work schedule to Hughes through a mobile phone application. Rose paid Hughes hourly and withheld taxes from her paycheck. Rose required Hughes to follow a specific dress code, issued her a badge identifying her association with Rose and required her to wear it, and provided her with gear. Rose also set the minimum standards of care for the clients that had to be accomplished each day.

In response to these facts, the Fund first argues that Rose did not exercise a degree of control over Hughes sufficient to conclude she was an employee, relying on the unpublished opinion in *Pineda v. Dante Siding, LLC*, No. 1561-23-1 (Va. Ct. App. July 30, 2024). But *Pineda* involved a construction worker who did not wear "any type of insignia," was paid a daily rate, provided his own hand tools, and had no taxes withheld from his pay. *Id.*, slip op. at 2. By contrast, Rose required Hughes to wear certain clothes and provided gear, issued and required her to wear a badge identifying her association with the employer, paid her by the hour, and withheld taxes from her paycheck. While the Fund argues that there is no evidence that Rose provided Hughes certain tools to perform her work, Hughes testified she provided no tools of her own and that any gear she did use was provided by Rose.

The Fund also argues that, because Rose had no supervisor on site, Hughes knew how to care for others from her life experience, and Hughes had discretion on how to accomplish her work, Rose did not exercise the requisite degree of control over Hughes's work methods for Hughes to qualify as an employee. We disagree. To reiterate, the Court must consider numerous factors, all of which inform the ultimate issue of the "power of control" and whether the relationship is one of employee or independent contractor. *See Hamilton Trucking*, 10 Va. App. at 715. Here, a key fact informing our conclusion that Rose had the "power of control" is that Rose set Hughes's hours, meaning Hughes could not control the actual number of hours she worked. In addition, Hughes was required to obtain Rose's permission before taking a client from the home. While Hughes may have decided the precise daily schedule, it was Rose that set the minimum standards for how Hughes was to care for the clients each day—feeding, bathing, and medication—and it planned to provide training. In other words, Rose exercised control not only over the result, but over the "means and methods" of care as well. *Richmond Newspapers*, 224 Va. at 98. And, as the deputy commissioner observed, employers do not attempt to control all employees' actions. The Commission correctly

determined that the totality of the evidence established the requisite degree of control by Rose over Hughes for employment.

Finally, the Fund argues that no evidence exists of Rose's power of dismissal over Hughes. Although the power of dismissal is a relevant factor, it is not dispositive and is only one factor among others "more or less useful in determining whose is the work and where is the power of control." *Hamilton Trucking*, 10 Va. App. at 715. As an initial matter, construing the record in the light most favorable to Hughes, the prevailing party before the Commission, there is an inference that, in the same way Rose had the power to hire Hughes and require her to do certain duties, it also had the power dismiss her. But regardless, as we have discussed at length, the record amply demonstrates that Rose had the power to control Hughes; any ambiguity concerning Rose's power to dismiss falls far short of rebutting that evidence.

In sum, because the record demonstrates that Rose had the power to control Hughes in the performance of her duties, the Commission did not err in concluding that Hughes was an employee under Code § 65.2-101. We turn next to whether her injury was compensable under the Act.

## II. The record supports the Commission's finding that Hughes's injury arose out of her employment.

An employee seeking workers' compensation benefits must prove "an injury (1) 'caused by an accident,' (2) arising out of and (3) 'sustained in the course of the employment.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774-75 (2019) (quoting *Rush v. Univ. of Va. Health Sys.*, 64 Va. App. 550, 556 (2015)). "In determining whether an injury arises out of employment, 'Virginia employs the actual risk test.'" *Norris v. ETEC Mech. Corp.*, 69 Va. App. 591, 597 (2018) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). "An '"actual risk" of employment' is 'not merely the risk of being injured while at work.'" *Bernard v. Carlson Cos.-TGIF*, 60 Va. App. 400, 405 (2012) (quoting *Taylor v. Mobil Corp.*, 248 Va. 101, 107 (1994)).

- 10 -

The "actual risk" standard "necessarily excludes an injury caused by '*a hazard to which the* [*worker*] *would have been equally exposed apart from the employment.* The causative danger must be peculiar to the work and not common to the neighborhood.'" *Id.* at 405-06 (quoting *Hill City Trucking v. Christian*, 238 Va. 735, 739 (1989)). "An employee who trips while walking up a staircase at work cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite." *Id.* at 407.

The record in this case supports the Commission's conclusion that Hughes proved an injury by accident arising out of her employment. The Commission found that the loose carpet on the stairs on which Hughes's foot caught was the hazard that caused the incident. Evidence in the record supports this finding—namely, Hughes's testimony, which the Commission credited. Hughes testified that she "was coming down the steps" when she tripped on the "loose," "worn carpet," and that she fell and injured her right knee. Hughes saw the carpet moving because it "wasn't attached properly." On January 14, 2022, Dr. Marlow, an orthopedist, noted that Hughes presented "with right-sided knee pain" and "she was at work and fell down some stairs." Dr. Marlow also noted on February 9, 2022, that Hughes injured her right knee "at work on stairs." Thus, Hughes described a condition peculiar to her workplace—loose or improperly attached carpet on the steps—causing her fall and injury, and her medical records corroborate a fall and injury at work. The record accordingly supports the Commission's finding that Hughes's accident arose out of her employment.

Resisting this conclusion, the Fund contends that the evidence is, at best, inconclusive that the stairs caused Hughes to fall or that the mechanism of Hughes's injury was a fall. The Fund points out that Hughes's January 6, 2022 medical record states that "while walking down steps she heard a crunch sound in her right knee that was followed by severe pain," and her February 10, 2022 medical record states that "her knee gave out while walking down the stairs." But, as noted

- 11 -

above, other medical records from January and February 2022 describe a fall and injury at work. The Commission made factual findings referencing these records, and on appeal this Court does not "review the weight, preponderance of the evidence, or the credibility of witnesses." *Jeffreys*, 297 Va. at 87. "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact." *Id.* The fact that Hughes's medical records do not track precisely her hearing testimony is not a basis for reversal of the Commission. *See Dollar Gen. Store v. Cridlin*, 22 Va. App. 171, 176-77 (1996) (holding that "the [C]ommission was free to credit claimant's testimony at the hearing as a basis for its finding of causation"). The Commission's determination that Hughes established an injury by accident was based on both Hughes's testimony and medical evidence, and we decline to disturb it.

The Fund also argues that Hughes did not adequately explain how the alleged defect on the stairs caused her foot to become stuck or to trip, citing another unpublished case, *Amaya-Hernandez v. NSR Sols., Inc.*, No. 0044-21-4 (Va. Ct. App. July 13, 2021). In *Amaya-Hernandez*, we affirmed the Commission's ruling finding no injury by accident where the claimant had described slipping on a vinyl floor covering but had testified there "was nothing wrong with the steps," and the evidence failed to show how "the vinyl covering of the stairs made them more slippery or hazardous than stairs with other surfaces." *Id.*, slip op. at 6. Here, the Commission credited Hughes's testimony and found that the loose carpet on which Hughes's foot caught was the hazard which caused her incident. The cause of the accident is a finding of fact, which we will not disturb if, as here, it is supported by the credible evidence. *Dominion Coal Corp.*, 53 Va. App. at 373.

In sum, the record supports the Commission's finding that the loose carpet was a condition "peculiar to [Hughes's] workplace," and we accordingly affirm its judgment that Hughes's injury arose out of her employment.

CONCLUSION

For the foregoing reasons, the Commission's award is affirmed.

*Affirmed.*