COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Willis


GIPSON'S LTD. T/A THE BOSS RESTAURANT
                                    MEMORANDUM OPINION*
v.    Record No. 1679-99-2              PER CURIAM
                                     DECEMBER 7, 1999
KIRK MALACHI PRINCE
AND
UNINSURED EMPLOYER'S FUND


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          (Michael P. Lafayette; Michael G. Montgomery;
          Simon, Lafayette & Associates, on brief), for
          appellant.

          (Jeremy C. Sharp; Geoffrey R. McDonald &
          Associates, on brief), for appellee Kirk
          Malachi Prince.

          (Mark L. Earley, Attorney General;
          Richard L. Walton, Jr., Senior Assistant
          Attorney General; Christopher D. Eib,
          Assistant Attorney General, on brief), for
          appellee Uninsured Employer's Fund.


     Gipson's Ltd. t/a The Boss Restaurant, filed a notice of

appeal and contends that the Workers' Compensation Commission

erred in finding that Kirk Malachi Prince was an employee of

Boss rather than an independent contractor.  As an appellee, the

Uninsured Employer's Fund similarly urges reversal of the

commission's decision.  Upon reviewing the record and the briefs

of the parties, we conclude that this appeal is without merit.

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Accordingly, we summarily affirm the commission's decision.  See Rule 5A:27.

"The [Act] covers employees but not independent contractors."  County of Spotsylvania v. Walker, 25 Va. App. 224, 229, 487 S.E.2d 274, 276 (1997).  This distinction must be determined from the facts of each case, with the burden upon the person seeking benefits under the Act to prove the relationship contemplated by the Act.  See id. at 229-30, 487 S.E.2d at 276; see Code § 65.2-101.  Although the commission's factual findings are binding and conclusive on appeal, when they are supported by credible evidence, see James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989), a "[d]etermination of the relationship involves a mixed question of law and fact which is reviewable on appeal."  County of Spotsylvania, 25 Va. App. at 230, 487 S.E.2d at 276.

Generally, an individual "'is an employee if he works for wages or a salary and the person who hires him reserves the power to fire him and the power to exercise control over the work to be performed.  The power of control is the most significant indicium of the employment relationship.'" Behrensen v. Whitaker, 10 Va. App. 364, 367, 392 S.E.2d 508, 509-10 (1990) (quoting Richmond Newspapers, Inc. v. Gill, 224 Va. 92, 98, 294 S.E.2d 840, 843 (1982)); see also Stover v. Ratliff, 221 Va. 509, 512, 272 S.E.2d 40, 42 (1980).

-

> [T]he right of control includes not only the power to specify the result to be attained, but the power to control "the means and methods by which the result is to be accomplished."  An employer/employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work.  "[I]f the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor."

Intermodal Servs., Inc. v. Smith, 234 Va. 596, 601, 364 S.E.2d 221, 224 (1988) (citations omitted).

In holding that an employee/employer relationship existed between Prince and Boss, the commission found as follows:

> The evidence establishes that the ultimate power to discharge a particular security guard rests with Boss rather than Alexander.  In so finding, we rely on Dance's unrebutted testimony.  Boss did not exercise the right to instruct [Prince] as to the procedure to use in evicting an unruly customer, but it appears that it retained the power to control other major aspects of the duties performed by [Prince]. It directed [Prince] to wear a side arm and uniform.  It directed [Prince] to perform such duties as checking identification cards and placing wrist bands on patrons.  These duties are within the normal scope of the employer's business.  It directed which customers should be frisked, arrested or transported to the magistrate.  The period of employment was not limited to the completion of a certain task but appears to be open-ended.  [Prince] was paid on an hourly basis and received instructions at times from Boss managers.  We find that the record establishes the existence of a master-servant relationship between Boss and [Prince].

-

The commission's findings are amply supported by credible evidence in the record. The evidence proved that James Alexander recruited Prince to work for Boss as a part-time security guard. Alexander also worked for Boss as a security guard. Although Alexander believed that he was an independent contractor, no evidence showed that Alexander provided this service for any other entity. Alexander testified that he recruits security guards for Boss, coordinates their work schedules, and decides which security guards will work on a particular night. However, Boss determined the number of security guards that would work on any given evening.

Nathan Dance, a manager for Boss, testified that Boss hired Alexander to manage all security personnel and that Boss considered the security guards to be independent contractors. Dance admitted, however, that Alexander had terminated another security guard at the suggestion of Boss management and that on occasion Boss managers gave directions to the security guards.

Prince did not complete an employment application and was paid by Boss on an hourly basis in cash without any deductions for taxes or social security. Alexander set the work schedule for Prince, although Prince could decline to work a shift. Prince believed that Alexander was an employee of Boss, and Prince worked at the direction of both the senior security guards and Boss management personnel, who were on duty. If

-

Prince was the only security guard on duty, he took instructions from Boss management.

Boss required that Prince obtain at his own expense and wear a black military style uniform and carry a handgun.  While on duty, Prince performed various chores at the direction of Boss employees, including checking identification and ages of customers, placing wrist bands or a fluorescent ink stamp on customers, frisking customers for contraband, providing security in the bar or dance areas, evicting unruly customers, making arrests, and breaking up fights.  Boss also determined, on a case-by-case basis, which customers would be arrested and taken before a magistrate.

This evidence supports the commission's findings.  Thus, the commission could reasonably conclude that Boss exercised the requisite control over Prince to make him its employee.

For these reasons, we affirm the commission's decision.

Affirmed.